1
2
3
4
5
6
7
8
9
10

**UNITED STATES FEDERAL DISTRICT COURT**

11

**WESTERN DISTRICT OF WASHINGTON**

12
13
14
15
16
17
18
19
20
21
22
23
24
25

JAMES   and   SHAYLEE   MEDICRAFT,
husband and wife and the marital community
thereof, themselves and on behalf of their
minor children: JM, AM, EM, MM and NM,

Plaintiffs,

v.

THE STATE OF WASHINGTON; DEREK P.
LEUZZI and JANE DOE LEUZZI, husband
and wife and the marital community thereof;
ROSS HUNTER and JANE DOE HUNTER,
husband and wife and the marital community
thereof; TANESSA SANCHEZ and JOHN
DOE SANCHEZ, husband and wife and the
marital community thereof; TABITHA CULP
and JOHN DOE CULP, husband and wife and
the marital community thereof; ELIZABETH
STERBICK and JOHN DOE STERBICK,
husband and wife and the marital community
thereof; CLEVELAND KING, and JANE
DOE KING, husband and wife and the martial
community thereof; TABITHA POMEROY
and JOHN DOE POMEROY, husband and
wife and the marital community thereof;
PHOENIX   PROTECTIVE   CORP.,   a

**CASE NO. 2:21-cv-01263-JCC-MLP**

**FIRST AMENDED COMPLAINT
FOR DAMAGES**

JURY DEMANDED

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

Washington State corporation; SHEILA )
LESLIE and JOHN DOE LESLIE, husband )
and wife and marital community thereof; )
JAGRUT SHAH and JANE DOE SHAH, )
husband and wife and the marital community )
thereof; LUFTI AL MARFADI and JANE )
DOE MARFADI, husband and wife and )
marital community thereof; COLVIN CIVISH )
and JANE DOE CIVISH, husband and wife )
and marital community thereof and JOHN )
DOES 1 through 20, residents of Washington, )
                                                        )
                                   Defendants.      )

## I.   INTRODUCTION

1. The "interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court of the United States. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Children "have a substantive due process right to be free from unreasonable risk of harm, including a risk flowing from the lack of basic services, and a right to reasonable safety." *Braam v. State of Washington*, 150 Wn. 2d 689, 699-700, 81 P.3d 851 (2003). Defendants, State of Washington and its agents, by perjury and other unlawful means, took the Plaintiff children from their parents, and while the children were in the State's custody, the State subjected them to grievous psychological, physical, and sexual abuse. Although the Honorable Judge Amini reunited the family nearly a year into their ordeal, nothing can fully mend the harm done by the State and its agents. Plaintiffs come to this Court for such relief as the law can provide.

## II.   PARTIES AND JURISDICTION

2. Plaintiffs James and Shaylee Medicraft are a married couple now residing in South Carolina.

3. Plaintiffs JM, AM, EM, MM, and NM are the minor children of James and Shaylee Medicraft, also residing in South Carolina (collectively the "children").

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

4. The State of Washington (the "State") is a Defendant in this matter due to the actions of its agency, the Department of Children, Youth and Families (the "Department").

5. Defendant Derek P. Leuzzi is, upon information and belief, a married individual residing and/or conducting business in King County, Washington, and an agent of the State of Washington. Upon information and belief, the acts complained of herein were performed on behalf of his marital community.

6. Defendant Ross Hunter is, upon information and belief, a married individual residing and/or conducting business in King County, Washington, and an agent of the State of Washington. Upon information and belief, the acts complained of herein were performed on behalf of his marital community.

7. Defendant Tanessa Sanchez is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of her marital community.

8. Defendant Tabitha Culp is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of her marital community.

9. Defendant Elizabeth Sterbick is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of her marital community.

10. Defendant Cleveland King is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of his marital community.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

11. Defendant Tabitha Pomeroy is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of her marital community.

12. Defendant Phoenix Protective Corporation ("Phoenix") is a Washington for profit corporation doing business in King County.

13. Defendant Sheila Leslie is an owner of Phoenix, and is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of her marital community.

14. Defendant Jagrut Shah is an owner of Phoenix, and is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of hi marital community.

15. Defendant Lufti Al Marfadi is or was an employee of Phoenix, and is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of his marital community.

16. Defendant Colvin Civish is or was an employee of Phoenix, and is, upon information and belief, a married individual residing and/or conducting business in King County, Washington and an agent of the Department. Upon information and belief, the acts complained of herein were performed on behalf of his marital community.

17. Additional unnamed Defendants John Does are, on information and belief, agents of the State of Washington and/or Phoenix and residents of Washington, names currently unknown, whose most material misconduct is alleged below.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

18. The State Court from which this action was removed, with the consent of the State of Washington, had jurisdiction over this action under RCW 2.08.010.

19. This Court has jurisdiction over all claims against the State, and including later amendment, when the State waived any 11th Amendment protections pursuant to their consent to removal and further pursuant to *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 613, 122 S. Ct. 1640, 1640, 152 L. Ed. 2d 806 (2002); *see, also*, *Embury v. King*, 361 F.3d 562 (9th Cir. 2004), as amended (May 17, 2004), amended, No. 02-15030, 2004 WL 1088297 (9th Cir. May 17, 2004).

20. Venue is appropriate in the Western District where the acts and omissions complained of occurred in the Western District.

### III.   FACTS

21. On or about December 6, 2019, the five children were taken from their parents by the State, following a prior brief removal and reunion.

22. The children ranged in age from one to nine years old when removed.

23. DCYF knew Mrs. Medicraft was capable of caring for her children prior to the children being taken December 6, 2010; Megan Meyer and Tanessa Sanchez, two DCYF social workers assigned to work with the family during the time that Mrs. Medicraft had the children in her care in shelter care status, both testified to the mother's ability to care for the children on her own, including out in the community; Megan Meyer testified that she supervised three visits between the father and children and that the father was affectionate, encouraged the children to take turns, and she had no concerns about violence or aggression during visits; Michelle Ruelas, a forensic social worker with over 40 years of experience in child welfare, concurring with Ms. Meyer's assessment. Exhibit A, Order Dismissing Dependency, Fact Nos. 10-14 & 18-19.

24. The Department used false sworn statements under penalty of perjury in court proceedings to justify taking and/or keeping the children from their home.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

25. On cross-examination, Tanessa Sanchez admitted under oath that prior statement in her sworn declaration (signed December 6, 2019), <u>used to remove the children</u>, were false. Exhibit PP.

26. Ms. Sanchez' testimony on cross-examination proved that her prior declaration used to remove the children, that she personally observed the father violated a purported no-contact order from New York in November of 2019.

27. But Ms. Sanchez had never met or seen Mr. Medicraft in November 2019.

28. Even if Ms. Sanchez had observed this, there is no legal authority for the State to remove children from their mother because their father violated a no-contact order from another state.

29.  On cross-examination, Ms. Sanchez' admitted her declaration further misled that Court, omitting that multiple prior investigations of the Medicraft family were <u>unfounded</u>. Exhibit PP.

30. Ms. Sanchez further stated, falsely, in a sworn declaration that she observed a decline in Mrs. Medicraft's care of the children.

31. Casenotes and other evidence further prove that Ms. Sanchez' statements were false.; the State even had Mrs. Medicraft care for the children <u>in a motel room</u> instead of at home, despite their claims she was unfit to parent.

32. Defendant Sanchez also, falsely, testified that Mrs. Medicraft admitted to pulling her children's hair.

33. On information and belief, these, and other, false sworn statements were intentionally fabricated by Defendant Derek Leuzzi, a Washington State Assistant Attorney General, and by Defendants Elizabeth Sterbick, Tabitha Culp, Tanessa Sanchez, and/or Cleveland King, social workers employed by the Department.

34. Defendants Sanchez and Culp, testified under oath and in declarations that the Medicrafts have a history of moving from state to state when CPS gets involved.

Arnold & Jacobowitz PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

35. The Medicrafts do not have a history of moving from state to state when CPS gets involved.

36. Even if they did have such a history, the removal of the Children would not be justified under Washington law.

37. The State alleged that Mrs. Medicraft failed to comply with a shelter care order by allowing the father to have access to the children outside of visitation.

38. The State was unable to support their contention and even if the State could, such a violation would not, under Washington State law, justify the removal of the children.

39. The State alleged Mrs. Medicraft rejected DCYF intervention and refused access to the children; Judge Amini found this to be false as well. Exhibit A.

40. Defendant Leuzzi further failed to follow the law, working to remove the children without an imminent threat and without a court order.

41. Defendant Leuzzi further, without basis, misrepresented a history of domestic violence; no such history exists.

42. Defendant Leuzzi futher, without basis, sought to deprive Mr. Medicraft of visitation rights.

43. Defendant Leuzzi, further, without basis, sought court orders to medicate the Children.

44. At the same time, the State failed to provide proper medical and psychiatric care for the Children.

45. Elizabeth Strebick further lied in an email regarding Mr. Medicraft on December 18, 2019. Exhibit LL; video taken of the alleged incident directly contradicts her statements. Exhibit MM.

46. The Defendants knew, or should have known, that the false sworn statements were proffered by individuals unable to make such statements truthfully.

47. The State raised allegations related to the family in New York; but the State had no actual evidence when it brought the dependency .

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

48. As Judge Amini well summed: "I also did not hear any testimony from New York. I mean New York school, New York daycare, New York neighbors, Yew [sic] York anybody." Exhibit CC.

49. As Judge Amini also found, the State's "investigation wasn't done correctly or thoroughly." Exhibit CC.

50. Despite this improper and non-thorough investigation, and despite Ms. Meyer, Ms. Sanchez, and Ms. Ruelas assessment, DCYF removed the children in December 2019 on the premise that Mrs. Medicraft "would leave the state with the children;" Mrs. Medicraft's "history with DCYF, however showed that DCYF had previously removed the children, albeit for a short time, and the mother had not left the state. The history of the family shows that the Mother had remained in the state with her children and worked with DCYF and the school." Exhibit A, Fact No. 52.

51. There is no legal authority to remove children because DCYF fears they might move.

52. The Department, in violation of its own policy, and law, further separated the children from one another.

53. Not until ten months after the children were wrongfully seized by the Department, were they reunited with their parents, by the Honorable Susan H. Amini where, during a dependency hearing, Hon. Amini orally ruled for the State to immediately return the children to the Medicrafts. Hon. Amini's written order dismissing the dependency was later issued.

54. The State attempted to use Mrs. Medicraft's childhood California child protective services files, including information protected by HIPAA, against her and her family at the dependency hearing.

55. While in the State's custody, the three older children, and possible a fourth, were forced by agents of the Department to spend nights in the Department's office, hotels, and State vehicles. Order Dismissing Dependency, Fact No. 24 & 57.

FIRST AMENDED COMPLAINT FOR DAMAGES - 8

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

56. A typical day in the life at the Kent Office is recounted, under oath by Jason Bragg. Exhibit RR.

57. Mr. Bragg observed the JM and AM forced to stand in the rain guarded by Phoenix security, while Defendant Cleveland King ate his breakfast from the warm and dry office. Exhibit RR.

58. Mr. Bragg observed JM and AM locked all day in the dirty visitation room with no furniture. Exhibit RR.

59. As can be expected of a young child locked in a single room with no toys or educational material, Mr. Bragg observed AM run across a busy street once able to escape. Exhibit RR.

60. Contrary to the Department's entire theory of their case, Mr. Bragg also observed the children's behavior change "like someone have turned it off with a switch" when their mother was allowed visitation. Exhibit RR.

61. Agents of the Department forced the children to sleep in cars expressly as punishment.

62. Agents of the Department purposefully, and as punishment, would refuse the children blankets during overnight stays in cars, and would roll down windows and adjust climate control to make the children less comfortable.

63. Attached as Exhibit B is a Whistleblower Complaint describing a policy of punishing children as described above and instituted by Defendant Tabitha Pomeroy.

64. Attached as Exhibit C is an internal Departmental memo describing one of the children's car stays, during which he was deprived of a blanket and was told he must "be on [his] best behavior to stay in hotel rooms."

65. The State also put the children in further danger by retrofitting their vehicles with seatbelt locks, contrary to department policy.

66. Department casenotes further confirm the children were forced to spend the night in State vehicles. Exhibit SS.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

67. While in the State's custody, at least the three older children were forced to spend days in a locked visitation room at the Department's Kent Office, stripped of all furniture and toys. Order Dismissing Dependency, Fact No. 31.

68. Attached as Exhibits D–F are images of the visitation room described above.

69. Agents of the Department, names currently unknown, purposefully, and as punishment, would take the children's clothing, including taking their shoes and jackets, before forcing them to stand outside in the rain. Exhibit WW.

70. While in the State's custody, the three older children were physically assaulted by agents of the Department, names currently unknown. Order Dismissing Dependency, Fact No. 33.

71. Other children have been subjected to the same treatment; Exhibit II is a picture taken by Shaylee of another child on the floor in the Kent Office, this child was ignored when they asked staff for food and water, which Ms. Medicraft then provided.

72. The Children were threatened with sleep deprivation. Exhibit VV.

73. In addition to the facts found by Judge Amini, the children were also beaten, held down, thrown to the ground, handcuffed, and subjected to basket holds so severe that, on at least one occasion, one of the children lost consciousness.

74. The three older children were physically assaulted by agents of Defendant Phoenix.

75. During one such episode of physical abuse, a social worker for the Department called the Kent Police Department to report their own security, provided by Phoenix.

76. Despite complaints, the Department failed to investigate the assaults. The Department failed to take necessary action to prevent assaults by its agents.

77. While in the State's custody, the three older Medicraft Children were physically assaulted by other children.

78. At least some of these assaults took place in overcrowded hotel rooms and Department offices.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

79. Attached as Exhibit G is an image of one of the children's pillows, soaked in blood from the night after one such assault.

80. Despite complaints, the Department failed to investigate these assaults either. The Department failed to take necessary action to prevent assaults. The Department even allowed assaultive Phoenix Security personnel to continue guarding the Children.

81. Attached as Exhibits H–U are photographs, redacted where appropriate to protect the child's identity, which depict physical injuries sustained by the children while in the State's custody.

82. Attached as Exhibit V-X are video of the children, blurred to protect their identities, describing abuse at the hand of the Department.

83. While in the State's custody, at least one of the three older children was sexually assaulted by an agent of the Department, name currently unknown.

84. Despite the child's complaint, the Department failed to investigate this assault either. The Department failed to take necessary action to prevent assaults by its agents.

85. While in the State's custody, including in the presence of State agents who did not intervene, at least one of the children was sexually assaulted by older children. Exhibit WW.

86. The Department was on notice of the assaults of the children, including the sexual assaults. Attached as Exhibits Y & Z are email strings from Plaintiff James Medicraft to various Defendants.

87. On April 10, 2021 JM complained of inappropriate touching and painful restraints at the "camp" he was sent to during the day. Exhibit TT.

88. Despite the child's complaint, the Department failed to investigate the assault. The Department failed to take necessary action to prevent assaults.

89. On at least one occasion, when one of the children complained of abuse, and asked to speak to a Judge, the child was placed in overnight solitary confinement as a punishment.

Arnold & Jacobowitz PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

90. When the parents brought legitimate safety concerns to the attention of the Department, they were threatened with the loss of visitation rights, which were ultimately, and improperly, terminated by the Department.

91. The Department, on at least one occasion, attempted to coerce the children into perjuring themselves through threats.

92. Exhibit X, above, further describes the Department coercing the children to run from their parents in an attempt to disparage the parents.

93. Exhibit GG, a video, shows AM telling his father that he was threatened by the Department if he did not pretend to "be mean" to his father.

94. Exhibit HH, a video, shows JM telling his father DCYF told him to lie and state that his father was abusive.

95. At least one of the children was injured in a car accident while an agent of the Department was operating the motor vehicle the child was riding in.

96. The Department failed to perform proper evaluation of the children before or while having them in custody. Order Dismissing Dependency, Fact No. 38.

97. The Department caused or allowed "the children [to be] placed in difficult experiences directly prior to the evaluations," and misinformed or failed to inform the evaluator of these and other material facts about the children to defeat dismissal of the dependency. Order Dismissing Dependency, Facts No. 30–34.

98. Judge Amini further stated at her oral ruling, regarding the Department's conduct in setting up the Children's evaluation: "why did you set it up this way? … Would you do this for yourself? For your child? For your nephew? Niece?  … does that makes sense? Honestly it does not." Exhibit CC.

99. While in the Department's custody, at least the three older children were, without prescription, and without the attendance of any licensed medical professional, and

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

without parental advice, routinely medicated by agents of the Department, names currently unknown.

100. Exhibit Y is a photograph of James Medicraft holding a handful of what appears to be Benadryl, found in one of the children's possession while in the Department's custody.

101. On information and belief, the Department gave the children medication for off-label purposes, including, to reduce hunger and cause drowsiness, to make the children easier to control, and to administer psychotropic medications without parental consent.

102. The Department's off-label, unprescribed use of medication on the children was intentionally harmful, reckless, or at least grossly negligent.

103. On many occasions, the Department failed to give some or all of the children enough to eat while they were in the Department's custody.

104. On several occasions, agents of the Department, names currently unknown, deprived some of the children of food as punishment.

105. The three older children were deprived of the use of the bathroom throughout the day while being held in Department offices.

106. The Department lost physical custody the three older children on repeated occasions.

107. The children were denied regular education while in the Department's custody, including support services under the three older children's Individualized Education Plans.

108. The children were denied healthcare on certain occasions when they suffered injuries or illnesses while in the Department's custody.

109. The children were denied appropriate psychiatric case while in the Department's custody.

110. Both AM and EM were deprived of their prescribed inhalers while in the Department's custody.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

111. MM, while in the Department's custody was denied follow-up visits to Seattle Children's Hospital, despite the Department's knowledge of a serious heart condition.

112. When the Medicraft parents inquired about MM's follow-up, the Department lied and claimed it occurred when it did not.

113. The Department was aware that the three older children required eyeglasses but lost and/or took their eyeglasses from them and failed to provide them with routine and necessary optometrist visits.

114. The children further suffered neglect of their dental health after being taken from their parents, including the loss of JM's orthodontic spacer.

115. Agents of the Department, names currently unknown, expressly threatened the three older children with institutionalization out-of-state, including at institutions which other states, and Disability Rights Washington, have deemed unfit to receive foster children.

116. Agents of the Department, names currently unknown, expressly threatened the four older children with arrest, and called the police to further the threat.

117. Contrary to their own policy and in violation of RCW 13.34.025, the Department improperly withheld or threatened to withhold the Medicraft parents' visitation rights to coerce their and their children's cooperation or silence.

118. Contrary to their own policy and in violation of RCW 13.34.025 and *Braam v. Washington*, the Department improperly withheld or threatened to withhold the children's right to visit one another to coerce cooperation or silence from them. Exhibit UU.

119. Ms. Culp "to acknowledge[d] on cross-examination that the father's visits were summarily suspended by the Department without a court order on January 24, 2020." Exhibit A, Finding of Fact No. 31.

120. James Medicraft, acting *pro se*, filed a complaint in the Federal District Court in and for the Western District of Washington.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

121.  A true and correct copy of that pleading, as redacted by Court Order, is attached as Exhibit BB, and the facts alleged therein are incorporated as if fully set forth herein.

122.  Despite Judge Amini's oral ruling to reunite the family, the Department refused, and an emergency telephonic hearing had to be held to enforce the Court's oral ruling, which is further supported by Hon. Amini's written orders.

123.  Once reunited, Mr. and Mrs. Medicraft took their children to South Carolina. Since their move, someone calling from a Washington State area code phone number has repeatedly contacted South Carolina's Child Protective Services agency to falsely report abuse of the children and the Medicraft's younger child.

124.  South Carolina's Child Protective Services agency has investigated the Medicrafts and found no basis for these complaints.

125.  On information and belief, one or more agents of the Department, names currently unknown, are responsible for these false reports to South Carolina, to harass Plaintiffs.

126.  False reporting from Washington State area codes has continued even during the pendency of this lawsuit.

127.  As recently as September 21, 2021 state agents have attempted to access the children's email accounts. Exhibit JJ is a copy of a Google alert received by Mr. Medicraft of yvettemeredithcubero@gmail.com; Ms. Cubero works for DCFY.

128.  The children have developed serious behavioral issues and other signs of trauma since, and as a result of, their improper removal from their parents and the abuse they suffered while in the Department's custody and at the Department's hands.

129.  "[T]he timeline of the behaviors shows that the behaviors *began* and worsened as Department intervention increases…. At different times in January and February of 2019 [sic] [the three older] children were hospitalized at Seattle Children's Hospital. Prior to their removal, none of the children had required this type of intervention." Order Dismissing Dependency, Fact No. 48.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

130.  On December 26, 2019, Elizabeth Sterbick physically accosted Mrs. Medicraft, which was reported to the Kent Police Department, Case No. 19-18684.

131.  The Department routinely called the police department to intimidate the children, including a six-year-old girl.

132.  Plaintiffs have incurred, and will continue to incur, costs and expenses for medical care and therapy to try to undo the harm done to them by Defendants.

133.  In all their acts alleged above, Phoenix agents acted within the scope of their agency and Phoenix is fully liable for their acts.

134.  Defendants knew or should have known that their misconduct would violate Plaintiffs' clearly established rights.

135.  In addition to knowing that there are violating clearly established rights, DCFY has routinely lied to the public.

136.  Despite handcuffing, vehicles with seatbelt locks, and security holds being put on the Medicraft children, at a July 15, 2020, DCYF oversight committee hearing, Defendant Ross Hunter told members of the Washington State legislature that children are never restrained.

137.  Defendant Hunter acknowledged that DCYF cannot legally use the same restraints as juvenile rehabilitation and that DCYF does not; that was a lie.

138.  Defendant Hunter also represented those children are not placed out of state; but the Medicrafts were threatened with the same.

139.  Defendant Hunter also claimed that most night-to-night placements are children refusing placements; this is false.

140.  Defendant Hunter also claimed that the only children forced to sleep in cars and hotels were teen-aged and that it was incredibly rare; this is also false.

FIRST AMENDED COMPLAINT FOR DAMAGES - 16

## IV.   FIRST CAUSE OF ACTION – Deprivation of James Medicraft's Rights under 42 U.S.C. § 1983

141.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

142.  James Medicraft, as the father of the children, has a fundamental liberty interest in the care, custody, and management of his children.

143.  James Medicraft's liberty interest was violated when the State improperly removed his children.

144.  James Medicraft's liberty interest was violated when the State abused and/or allowed for the abuse of his children.

145.  James Medicraft's liberty interest was violated when the State provided false testimony in the matter of his children's dependency.

146.  James Medicraft's liberty interest was violated when the State arranged for negative evaluations.

147.  James Medicraft's liberty interest was violated when the State improperly denied him visitation with his children.

148.  James Medicraft has been damaged in an amount to be proven at trial.

## V.   SECOND CAUSE OF ACTION – Deprivation of Shaylee Medicraft's Rights under 42 U.S.C. § 1983

149.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

150.  Shaylee Medicraft, as the mother of the children, has a fundamental liberty interest in the care, custody, and management of her children.

151.  Shaylee Medicraft's liberty interest was violated when the State improperly removed her children.

152.  Shaylee Medicraft's liberty interest was violated when the State abused and/or allowed for the abuse of her children.

Arnold & Jacobowitz PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

153. Shaylee Medicraft's liberty interest was violated when the State arranged for negative evaluations.

154. Shaylee Medicraft's liberty interest was violated when the State provided false testimony in the matter of her children's dependency.

155. Shaylee Medicraft's liberty interest was violated when the State improperly denied her visitation with her children.

156. Shaylee Medicraft's liberty interest was violated when the State attempted to use her prior, and irrelevant, medical records against her.

157. Shaylee Medicraft has been damaged in an amount to be proven at trial.

## VI.   THIRD CAUSE OF ACTION – Deprivation of JM's Rights under 42 U.S.C. § 1983

158. Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

159. JM has a fundamental liberty interest in living with his parents and not being abused by agents of the State.

160. JM's fundamental liberty interest was infringed by his improper removal by the State from his parents.

161. JM's fundamental liberty interest was infringed upon through the abuse he suffered in State custody.

162. JM's fundamental liberty interest was violated when the State acted in a way that would essentially guarantee negative evaluations.

163. JM has been damaged in an amount to be proven at trial.

## VII.   FOURTH CAUSE OF ACTION – Deprivation of AM's Rights under 42 U.S.C. § 1983

164. Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

165. AM has a fundamental liberty interest in living with his parents and not being abused by agents of the State.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

166. AM's fundamental liberty interest was infringed by his improper removal by the State from his parents.

167. AM's fundamental liberty interest was infringed upon through the abuse he suffered in State custody.

168. AM's fundamental liberty interest was violated when the State acted in a way that would essentially guarantee negative evaluations.

169. AM has been damaged in an amount to be proven at trial.

## VIII.   FIFTH CAUSE OF ACTION – Deprivation of EM's Rights under 42 U.S.C. § 1983

170. Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

171. EM has a fundamental liberty interest in living with his parents and not being abused by agents of the State.

172. EM's fundamental liberty interest was infringed by his improper removal by the State from his parents.

173. EM's fundamental liberty interest was infringed upon through the abuse he suffered in State custody.

174. EM's fundamental liberty interest was violated when the State acted in a way that would essentially guarantee negative evaluations.

175. EM has been damaged in an amount to be proven at trial.

## IX.   SIXTH CAUSE OF ACTION – Deprivation of MM's Rights under 42 U.S.C. § 1983

176. Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

177. MM has a fundamental liberty interest in living with her parents and not being abused by agents of the State.

178. MM's fundamental liberty interest was infringed upon through the abuse she suffered in State custody.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

179.  MM's fundamental liberty interest was infringed by her improper removal by the State from his parents.

180.  MM has been damaged in an amount to be proven at trial.

## X.   SIXTH CAUSE OF ACTION – Deprivation of NM's Rights under 42 U.S.C. § 1983

181.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

182.  NM has a fundamental liberty interest in living with his parents and not being abused by agents of the State.

183.  NM's fundamental liberty interest was infringed by his improper removal by the State from his parents.

184.  NM has been damaged in an amount to be proven at trial.

## XI.   SEVENTH CAUSE OF ACTION – Assault and Battery of JM

185.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

186.  While in the State's custody, JM was subjected to harmful bodily contact.

187.  While in the State's custody, JM was placed in imminent fear of bodily harm.

188.  These episodes include, without limitation, as testified to by Ms. Culp on behalf of the State: "[JM] was assaulted by a [Phoenix] security guard,  that on another occasion a [Phoenix] security guard threatened to hit [JM] with a belt. Exhibit A, Fact No. 24.

189.  Ms. Culp further testified that: "[JM] reported sexual abuse by one of the overnight social workers in March/April 2020." *Id*.

190.  On January 22, 2020 JM was assaulted by Phoenix security guards Defendants Marfadi and Civish who push JM to the ground multiple times, pinned him to the ground, and "threw [JM] bodily into the back of the car." Exhibit FF.

191.  Social workers were disturbed enough by this episode that they reported Defendant Marfadi to law enforcement (Kent Police Officer Madriana took down incident report No. TP000004864). Exhibit FF.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

192. Despite Defendant Marfadi's criminal behavior, the Department continued to assign him to guard the children and on he pinned JM to a bed with his hand on the child's neck.

193. On March 15, 2020 JM was also restrained by Social Worker Hingergartd on an air mattress in a hotel room.

194. Exhibit KK was taken after another time JM was physically abused by state agents.

195. JM has been damaged in an amount to be determined at trial.

## XII.  EIGHTH CAUSE OF ACTION – Assault and Battery of AM

196. Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

197. While in the State's custody, AM was subjected to harmful bodily contact.

198. While in the State's custody, AM was placed in imminent fear of bodily harm.

199. These episodes include, without limitation, as testified to by Ms. Culp, AM was assaulted by a Phoenix Security guard the day before his evaluation. Exh. A, Finding No. ¶ 39.

200. As evidenced by the Department's own casenotes, AM was further both assaulted and battered on January 3, 2019 when he was dragged by his shirt from the DCFY Kent Office, knocked to the ground, pinned against a car, and told he would be smacked upside the head if he didn't shut up. Exhibit DD.

201. Marks and bruising were additionally observed on the children, and DCYF put on notice on December 20, 2019. Exhibit EE.

202. On or about May 23, 2020 AM was handcuffed around the ankles by a Phoenix security guard; case notes claim that the Phoenix security "gave" the handcuffs to AM (itself grossly negligent), but AM and JM deny that and stated that AM was forcibly handcuffed around the ankle. Exhibit NN.

203. Jennifer Watts previously testified to AM being placed in a "security hold" screaming by a security guard. Exhibit OO.

204. AM has been damaged in an amount to be determined at trial.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

## XIII.   NINTH CAUSE OF ACTION – Assault and Battery of EM

205.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

206.  While in the State's custody, EM was subjected to harmful bodily contact.

207.  While in the State's custody, EM was placed in imminent fear of bodily harm.

208.  Such episodes include, without limitation, as testified by Ms. Culp: "[EM] was slapped across the face by a social worker." Exhibit A, Fact No. 24.

209.  EM has been damaged in an amount to be determined at trial.

## XIV.   TENTH CAUSE OF ACTION – Assault and Battery of Shaylee Medicraft

210.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

211.  Elizabeth Sterbick subjected Shaylee Medicraft to harmful bodily contact.

212.  Elizabeth Sterbick placed Shaylee Medicraft in imminent fear of bodily harm.

213.  Shaylee Medicraft has been damaged in an amount to be determined at trial.

## XV.   ELEVENTH CAUSE OF ACTION – Negligence

214.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

215.  The State had a duty to care for and to prevent physical and emotional harm to the children while they were in its custody, and a duty to the children and their parents to conduct evaluations in good faith, competently, and with due care, a duty to investigate complaints, and a duty to supervise its agents.

216.  The State breached its duties to Plaintiffs.

217.  Plaintiffs were physically and emotionally harmed by the State's breach of its duties to them.

218.  Mr. Shah and Mrs. Leslie have been negligent in their hiring of those Phoenix security guards who physically abused and/or threatened the Children.

219.  AM was additionally injured in a car accident in a DCYF vehicle in early December 2019. Exhibit EE.

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

220.  Plaintiffs have been damaged in an amount to be determined at trial by the negligence of the State, Phoenix, and each's principals and agents.

## XVI.   TWELFTH CAUSE OF ACTION – Negligent and/or Intentional Infliction of Emotional Distress

221.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

222.  Defendants engaged in extreme and outrageous conduct toward Plaintiffs.

223.  The complained of conduct was intentional and/or reckless.

224.  The complained of conduct actually resulted in severe emotional distress to Plaintiffs.

225.  Plaintiffs have been damaged in an amount to be determined at trial.

## XVII.  THIRTEENTH CAUSE OF ACTION – Civil Conspiracy

226.  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

227.  The Defendants combined to accomplish both unlawful purposes and/or lawful purposes by unlawful means.

228.  The Defendants entered into an agreement to violate the rights of the Plaintiffs.

229.  Plaintiffs have been damages by this civil conspiracy.

## PRAYER FOR RELIEF

NOW, THEREFORE, Plaintiffs, pray for the following:

1.  Judgment against Defendants on all claims;

2.  Damages in an amount to be proven at trial;

3.  Punitive damages as allowed by statute, where the Defendants' conduct was reckless and/or callously indifferent;

4.  Reasonable attorney's fees and costs as authorized by statute; and

5.  Such other and further relief as the Court deems just and equitable.

//

//

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

DATED this 12th day of October 2021.

**ARNOLD & JACOBOWITZ PLLC**

/s/ Nathan J. Arnold
Nathan J. Arnold, WSBA No. 45356
R. Bruce Johnston, WSBA No. 4646
2701 First Ave., Ste. 200
Seattle, WA 98121
(206) 799-4221
Nathan@CAJLawyers.com
*Counsel for Plaintiffs*