The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.,*
Plaintiffs,

v.

STATE OF WASHINGTON, *et al.,*
Defendants.

NO. 2:21-cv-1263

**ORDER ADOPTING PART AND
REJECTING IN PART REPORT AND
RECOMMANDATION**

## I.      INTRODUCTION

This matter comes before the Court on the Report and Recommendation ("R&R") of U.S. Magistrate Judge Michelle Peterson. Dkt. No. 87. The R&R recommends that the Court grant the Motion to Dismiss filed by Defendants Derek Leuzzi ("Leuzzi") and Jane Doe Leuzzi (collectively, "Defendants"). Dkt. No. 61. Having considered the briefs filed in support of and opposition to the Motion to Dismiss; the Report and Recommendation; the Plaintiffs' Objection and Defendants' Response thereto; and the remainder of the record and relevant case law, the Court finds and rules as follows.

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION
- 1

## II.   BACKGROUND

Plaintiffs James and Shaylee Medicraft and their five children filed this lawsuit against the State of Washington and numerous individual defendants, including Department of Children, Youth, and Families ("DCYF") social workers Tanessa Sanchez and Elizabeth Sterbick and, relevant to the instant motion, Assistant Attorney General Derek Leuzzi, counsel for DCYF. Among other things, Plaintiffs claim under 42 U.S.C. §1983 an infringement of their constitutional right to the "care, custody, and control of their children," arising from Defendants' alleged actions in connection with dependency proceedings concerning the five minor Medicraft children. Sec. Am. Compl., ("SAC"), Dkt. No. 55, ¶ 1. Those proceedings began in early 2019 and culminated in the children being removed from their parents' custody on December 6, 2019, pursuant to an Order Placing Children in Shelter Care, issued by Judge Mafe Rajul, King County Superior Court, Juvenile Department. *See* Dkt. No. 1-1, Ex. BB at 164-167.

Plaintiffs have claimed that while in state custody, the children were subjected to abusive treatment, including being forced to spend nights in DCYF vehicles and offices, held in locked empty rooms, and exposed to assault by other children and DCYF agents. SAC ¶¶ 59, 65-66, 75, 83-84. On October 28, 2020, King County Superior Court Judge Susan Amini issued an Order Dismissing Dependency, ordering that the children be returned to their parents. Compl., Ex. A. The family is currently residing in South Carolina. SAC, ¶¶ 2 & 3.

Generally speaking, the allegations against Defendant Leuzzi are related to actions taken in his role as counsel for DCYF in the Medicraft child dependency proceedings. More specifically, the Court gleans from the Second Amended Complaint the following allegations relevant to the instant motion. Defendant Leuzzi allegedly: (1) drafted and induced DCYF social

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

- 2

workers to sign declarations, falsely stating among other things that the Medicraft parents failed to appear for a February 6, 2019 court appearance in New York State, SAC, ¶¶ 31-34; (2) filed a sworn declaration falsely stating that Mrs. Medicraft "reportedly" has a history of drug and/or alcohol abuse and/or mental health issues, and had been ordered by a court to undergo chemical dependency treatment, *id.*, ¶¶ 41-42; (3) "without basis" sought court orders to medicate the children, *id.*, ¶ 47; (4) misrepresented a history of domestic violence, *id.* ¶ 44; and (5) "without basis, sought to deprive Mr. Medicraft of visitation rights." *Id.* ¶ 45. The SAC contains other vague and generalized allegations against Leuzzi, including that he "failed to follow the law, working to remove the children without an imminent threat and without a court order," and, "acting in an investigative role, met with social workers to plan the removal of the children." *Id.* ¶ 43, 35. Leuzzi is named in two causes of action: (1) for a deprivation of rights under 42 U.S.C. § 1983, *id.*, Tenth Cause of Action, ¶¶ 220-30; and (2) for conspiracy to fabricate false information about the Medicraft parents. *Id.*, Twenty-third Cause of Action, ¶¶ 290-91.

The Leuzzi Defendants moved for dismissal of all claims against them, under Federal Rule 12(b)(6), claiming that Leuzzi is entitled to the absolute immunity afforded prosecutors under certain circumstances or, in the alternative, to qualified immunity from Plaintiffs' claims. Plaintiffs opposed the motion. The R&R recommends that the Court find that Leuzzi is entitled to absolute immunity for all of the actions alleged in the SAC, and that he should be dismissed from this case. Defendants filed Objections to the R&R; Plaintiffs filed a Response to those Objections.

## III.    DISCUSSION

### A.  Motion to Dismiss Standard

On a motion to dismiss under Federal Rule 12(b)(6), a complaint may be dismissed as a

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

- 3

matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

Federal Rule 8(a)(2) provides that a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Well-pled allegations in the complaint are assumed to be true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION
- 4

**B.  Whether Defendant Leuzzi Is Entitled to Absolute Immunity**

*1.  The Law of Absolute Immunity*

Leuzzi argues that he is entitled to absolute prosecutorial immunity in connection with all of the conduct alleged in this lawsuit. At common law, the actions of judges, prosecutors, and other officials that were "intimately associated with the judicial phase of the criminal process" have been afforded absolute immunity from suit. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Courts have extended the doctrine to attorneys acting on behalf of the state in certain civil proceedings and to social workers, reasoning that "the initiation and pursuit of child-dependency proceedings [are] prosecutorial in nature and warrant absolute immunity on that basis." *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003); *see also Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (holding absolute immunity may apply in civil forfeiture context, as Supreme Court "has extended the reasoning of *Imbler* to agency officials 'performing certain functions analogous to those of a prosecutor'") (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)).

Absolute immunity is available, however, only where the "'activity or function' ... was part and parcel of presenting the state's case as a generic advocate." *Cox v. Dept. of Soc. & Health Servs.*, 913 F.3d 831, 838 (9th Cir. 2019) (quoting *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017)). In particular, actions taken "during or to initiate [dependency] proceedings" are protected by absolute immunity. *See Chen v. D'Amico*, 428 F. Supp. 3d 483, 502 (W.D. Wash. 2019) (citing *Miller*, 335 F.3d at 898) (noting that "the critical decision to institute proceedings to make a child a ward of the state is functionally similar to the prosecutorial institution of a criminal proceeding"); *see also Zayas v. Walton*, 2022 WL 1468997, at *4 (W.D. Wash. May 10, 2022) ("An assistant attorney general acting as legal counsel for the Department

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

of Children, Youth and Families in child dependency proceedings performs quasi-prosecutorial functions and is entitled to immunity for actions in connection with initiating and pursuing child dependency proceedings.") (citing *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 504 (3d Cir. 1997) (attorney representing a state child services agency is "entitled to absolute immunity for all of [the attorney's] quasi prosecutorial activities while representing [the agency] in connection with [a child's] dependency proceedings[.]").

It follows, therefore, that in determining whether absolute immunity applies, courts are to focus on the "activities" of which the defendant is accused, and on "the nature of the function performed, not the identity of the actor who performed it." *Milstein v. Cooley*, 257 F.3d 1004 (2001) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). Thus, "a prosecutor is entitled to absolute immunity for acts taken "in preparing for the initiation of judicial proceedings or for trial, and which occur in his role as an advocate for the State." *Kalina*, 522 U.S. at 126. Those same officials are not entitled to absolute immunity, however, "when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 710–11 (9th Cir. 2010) (citations omitted).

"In determining immunity, we accept the allegations of respondent's complaint as true," and "[t]he burden is on the official claiming absolute immunity to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity." *Kalina*, 522 U.S. at 122 (citation omitted); *Miller*, 335 F.3d at 897 (citing *Antoine*, 508 U.S. at 432). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n. 4 (1993).

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

- 6

1    *1. Whether Leuzzi Is Entitled to Absolute Immunity for Each of the Following Alleged*
     *Actions*

     As indicated above, courts should determine whether immunity applies to each alleged

     action giving rise to a plaintiff's claims. *Milstein*, 257 F.3d at 1008. The Court accordingly

     analyzes each of Plaintiffs' allegations related to Leuzzi individually, as follows.

     *a.    October 28, 2019 Declaration (SAC ¶¶ 41-42)*

     In their Second Amended Complaint, Plaintiffs allege, "Defendant Leuzzi filed a

     declaration on October 28, 2019, testifying that Mrs. Medicraft has a history of drug and/or

     alcohol abuse and/or mental health issues," and "further testified that Mrs. Medicraft had been

     ordered by a court to undergo chemical dependency treatment." SAC ¶¶ 41-42. The declaration

     was submitted as part of the State's Motion for Order Authorizing Release of Mrs. Medicraft's

     health records, filed several weeks prior to the dependency proceedings. Plaintiffs claim that

     "Leuzzi had no truthful basis for making this sworn statement." *Id.*[1]

     The Court concludes that Leuzzi is entitled to absolute immunity from liability related to

     these alleged actions. The Supreme Court has "held that absolute immunity applied to a

     prosecutor's 'appearance in court in support of an application for a search warrant and the

     presentation of evidence at that hearing.'" *Milstein*, 257 F.3d at 1009 (citing *Burns v. Reed*, 500

     U.S. 478, 492 (1991)). The Court reasoned that "[t]he immunity of a prosecutor is based upon the

---

[1] The R&R recommends dismissing Plaintiffs' claims based on these allegations, essentially concluding that the allegations are insufficient under Federal Rule 8 and *Iqbal*. R&R at 8 ("Plaintiffs' allegations that AAG Leuzzi submitted a false declaration or testimony are devoid of any further factual detail demonstrating the plausibility of such claims—especially in light of Plaintiffs' submission of other DCYF representative declarations utilized in the dependency proceeding with their pleadings."). As noted above, however, "[i]n determining immunity, we accept the allegations of respondent's complaint as true." *Kalina*, 522 U.S. at 122. Plaintiffs have provided the exact date of the alleged declaration and a fairly specific description of the subject matter of the allegedly false testimony. This "short and plain statement" is sufficient to support a plausible inference under *Iqbal* and Federal Rule 8 that Leuzzi performed the actions of which he is accused.

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

- 7

1    same purpose that underlies the immunity of judges and grand jurors acting within the scope of

2    their duties: to protect the judicial process." *Milstein*, 257 F.3d at 1007 (citing *Burns*, 500 U.S. at

3    485). This reasoning applies to the sworn "declaration" at issue here.

4          While Leuzzi signed the statements "under penalty of perjury," the "declaration" is

5    actually embedded within the State's motion, and a closer reading of the declaration reveals that it

6    is in essence a "presentation of evidence," entitled to absolute immunity under *Burns* and its

7    progeny. The statements Leuzzi made are not those of a fact witness, but of an attorney

8    "preparing for the initiation of judicial proceedings or for trial . . . in the course of his role as an

9    advocate for the State." *Kalina,* 522 U.S. at 126. As the declaration states, "[w]ithout complete

10   information regarding the status of the mother's participation, compliance, progress in treatment

11   and prognosis, the court will not have sufficient information on which to address the issues before

12   it in the upcoming dependency trial." Oct. 28, 2019 Mot. and Decl. for Order, Decl. of Nathan

13   Arnold, Ex. B at 2-3.

14         The equivocal language of the declaration further supports the conclusion that Leuzzi's

15   statements are not his own, as a fact witness's would be, but are those of the State. For example,

16   the declaration states "Shaylee Medicraft has *reportedly* received medical/mental health and

17   chemical dependency treatment from Therapeutic Health Services . . . The above-mentioned

18   institution(s) *may* have possession, custody and control of the records, filed, and documents

19   pertaining to Shaylee Medicraft. . . Shaylee Medicraft *may* have been previously ordered to sign

20   release to the Department for this information." *Id*. (emphases added); *compare Waggy v.*

21   *Spokane Cty*., 594 F.3d 707, 711 (9th Cir. 2010) ("a prosecutor sheds absolute immunity when

22   she acts as a 'complaining witness' by certifying that the facts alleged within an affidavit are

23

24   ORDER ADOPTING IN PART AND REJECTING IN
     PART REPORT AND RECOMMENDATION

25    - 8

true.").

Accordingly, Leuzzi's statements are distinguishable from the true fact testimony of declarations in which a prosecutor "personally vouched for the truth of the facts set forth in the certification under penalty of perjury," for which courts have denied absolute immunity. *Kalina*, 522 U.S. at 121, 130; *see also Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 844–45 (9th Cir. 2016) ("[T]he district court erred in concluding that [district attorney defendant] is entitled to absolute immunity for presenting a false statement in a declaration supporting her application for the subpoena duces tecum" where "declaration states particular facts under penalty of perjury."). To deny Leuzzi immunity for his statements because they were placed in the format of a declaration—when the same statements, had they been contained within the motion itself, would clearly enjoy absolute immunity—would be elevating form over substance. Where, as here, the statements made are so "intimately associated with the judicial phase of the [] process," they give rise to absolute immunity. *Imbler*, 424 U.S. at 430.

### b.   *Sterbick and Sanchez Declarations*

Plaintiffs have alleged that Leuzzi "intentionally fabricated" certain "false sworn statements" in declarations signed by other Defendants in this case, and submitted those declarations to the court in the dependency proceedings. SAC, ¶ 34; *see generally* SAC, ¶¶ 22-34. The declarations in question include that of Elizabeth Sterbick, a DCYF social worker who, Plaintiffs claim, "signed a declaration which Mr. Leuzzi wrote for her, opining in support of the removal petition [Leuzzi] filed, that the children 'are no longer safe in the care of their mother and require emergent and immediate removal.'" Pls.' Resp. at 11 (citing Dkt. No. 1-1 at 156, 221–23, 256). The Court is also able to discern, though Plaintiffs provide less detail, a claim that Leuzzi

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

1   submitted to the court a declaration containing the allegedly false testimony of another DCYF

2   social worker, Tanessa Sanchez. *See* Sanchez Decl., Dkt. No. 1-1, 158-62. Leuzzi argues that he

3   is entitled to absolute immunity for claims made in connection with these declarations.

4         The Court agrees. As Plaintiffs themselves aver, the Sterbick and Sanchez declarations

5   were filed "in support of the removal petition," inarguably initiating a court proceeding. *See* SAC,

6   ¶¶ 22-34 ("The Department used false sworn statements under penalty of perjury *in court*

7   *proceedings* to justify taking and/or keeping the children from their home."). These declarations

8   consequently fall squarely within the category of actions that are protected by an absolute

9   immunity. *See Miller*, 335 F.3d at 896 ("[T]he initiation and pursuit of child-dependency

10   proceedings [are] prosecutorial in nature and warrant[] absolute immunity on that basis.") (citing

11   *Meyers v. Contra Costa Cnty. Dept. Soc. Srvs.*, 812 F.2d 1154 (9th Cir.1987)). The Supreme

12   Court has expressly acknowledged the "absolute immunity of prosecutors and other attorneys for

13   eliciting false or defamatory testimony from witnesses or for making false or defamatory

14   statements during, and related to, judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259,

15   270 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 489-90 (1991)). Thus even assuming as true

16   Plaintiffs' allegation that these declarations contained "willfully fabricated evidence," Leuzzi

17   cannot be held liable for claims made in connection with them.

18         The allegedly fabricated testimony in the Sterbick and Sanchez declarations is

19   distinguishable from that in *Milstein*, in which the Ninth Circuit held that the defendant

20   prosecutor was not entitled to absolute immunity for a declaration that allegedly contained

21   "knowingly obtained false statements." *Milstein*, 257 F.3d at 1011. The defendant in *Milstein*

22   created that declaration *before* the institution of judicial proceedings, and was therefore acting in

23

24   ORDER ADOPTING IN PART AND REJECTING IN
     PART REPORT AND RECOMMENDATION

25

an investigatory, rather than prosecutorial, capacity. *Id.* ("This alleged conduct occurred before the grand jury was empaneled, before Milstein was arrested, and it must necessarily have occurred before the existence of probable cause.") (citations omitted). Here, the declarations were not used in the course of an investigation, but were submitted to the King County Superior Court, Juvenile Department under the caption "In Re Dependency Of" the five Medicraft children, in the course of the judicial proceedings. Leuzzi is therefore entitled to absolute immunity from, and dismissal of, any claims based upon his efforts in preparing and submitting these two declarations.

   c. *Remaining Allegations, Including that Leuzzi: (1) Misrepresented a History of Domestic Violence; (2) Made Attempts to Revoke Mr. Medicraft's Visitation Rights; and (3) Sought Court Orders to Medicate the Children*

   Plaintiffs also allege that AAG Leuzzi "misrepresented a history of domestic violence," "sought to deprive Mr. Medicraft of visitation rights," and "sought court orders to medicate the Children." SAC ¶¶ 44, 45, 47. Plaintiffs make several other vague allegations against Leuzzi, claiming that he, "acting in an investigative role, met with social workers to plan the removal of the children," and that he "failed to follow the law, working to remove the children without an imminent threat and without a court order." *Id.*, ¶¶ 35, 43.  Neither Plaintiffs nor Leuzzi has provided the Court with additional facts or evidence (other than what the Court has already discussed, above) in support of any these allegations, or in support of Leuzzi's claim to immunity from liability based upon them.

   This makes difficult any meaningful analysis of Leuzzi's entitlement to absolute immunity, which as noted is based not on the title or even the role of the defendant claiming the protection, but on the nature and context of the actions forming the basis of the claims against him. In the absence of any details that would help the Court discern under what circumstances

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

- 11

1   Leuzzi allegedly misrepresented a history of domestic violence, or attempted to revoke Mr.

2   Medicraft's visitation rights or medicate the children, the Court cannot determine whether or not

3   he is entitled to absolute immunity. Following the procedure approved by the Ninth Circuit in

4   *Miller v. Gammie*, therefore, the Court defers a ruling on whether Leuzzi is entitled to absolute

5   immunity for these alleged actions "until the nature of the functions the defendant[] allegedly

6   performed [is] sufficiently outlined to permit the court to apply" the law concerning the absolute

7   immunity doctrine. 335 F.3d at 899. Defendants may refile a motion for dismissal (under Federal

8   Rules 12(b)(6) or 56, as they deem applicable) if and when they obtain in discovery sufficient

9   grounds to do so.

## IV.    CONCLUSION

11  For the foregoing reasons, the Court adopts in part the Report and Recommendation of

12  Magistrate Judge Peterson as follows:

13  (1) Defendant Leuzzi is absolutely immune from liability related to his alleged actions in

14  connection with the drafting and submission of the October 28, 2019 declaration, and absolutely

15  immune from liability related to the Sterbick and Sanchez declarations, and claims based on these

16  alleged actions are dismissed;

17  (2) the Court defers ruling on the question of Leuzzi's absolute immunity from liability

18  based on the remainder of the allegations against him in the Second Amended Complaint, until

19  the actions he is alleged to have committed and grounds for claiming immunity are "sufficiently

20  outlined" to allow the Court to determine whether such actions are protected by absolute

21  immunity.

22  ///

23

24  ORDER ADOPTING IN PART AND REJECTING IN
    PART REPORT AND RECOMMENDATION

25  - 12

DATED this 5th day of October, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION

- 13