The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES and SHAYLEE MEDICRAFT, *et al.*,

Plaintiffs,

v.

THE STATE OF WASHINGTON, *et al.*,

Defendants.

Civil Action No. 2:21-cv-01263-BJR

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL

## I. INTRODUCTION

Plaintiffs are parents who claim they were wrongfully separated from their children by the State of Washington's Department of Children and Families ("DCYF"). Defendants are the State of Washington, DCFY, and various individual defendants whom Plaintiffs believe coordinated the separation. Plaintiffs filed a motion to compel discovery from defendant Derek Leuzzi, an assistant attorney general for the State who has argued that the attorney-client privilege prevents him from testifying. Having reviewed the motion, the opposition thereto, and the relevant legal authorities, the Court will deny Plaintiffs' motion to compel.

## II. BACKGROUND

As an attorney for the State, Leuzzi advised DCYF on assuming custody of Plaintiffs' children and litigated a dependency trial that ultimately returned custody to Plaintiffs. *See generally* Dkt. 55 ¶¶ 34-47. Plaintiffs accuse Leuzzi of conspiring with Tanessa Sanchez and Elizabeth Sterbick, state social workers also named as defendants, to fabricate evidence and separate Plaintiffs' family despite allegedly lacking a valid basis to do so. *See id*. Plaintiffs claim that, "prior to any Court Order to remove the children, Mr. Leuzzi, acting in an investigative role, met with social workers to plan the removal of the children." *Id.* ¶ 35. Leuzzi allegedly directed Sanchez and Sterbick to make false sworn statements regarding Plaintiffs' unfitness as parents.[1] *Id.* ¶ 34. It is unclear what Plaintiffs believe motivated Leuzzi to remove the children from Plaintiffs' custody. Plaintiffs state that "[u]pon information and belief, the acts complained of herein were performed on behalf of [Leuzzi's] marital community" but do not elaborate further, apart from noting that the investigation into Plaintiffs' family was "vindictive." *Id.* ¶¶ 5, 228.

In their summary judgment motion, Plaintiffs appear to allege that, whatever Leuzzi's original motivation was, it was compounded by his fear of reputational injury if the children were returned to their parents. *See* Dkt. 140 at 17. According to Plaintiffs, Leuzzi found flimsy or fabricated reasons for the State to retain custody of the children and presented them in a dependency trial, hoping that the original removal of the children would be validated thereby. *Id.* Plaintiffs bring § 1983 and conspiracy claims against Leuzzi, Sterbick, and Sanchez.

## III. DISCUSSION

The attorney-client privilege protects confidential communications undertaken for the provision of legal advice. It is well established that "the attorney-client privilege can arise with

---

[1] Leuzzi also filed a short declaration under his own name. Dkt. 92-2.

respect to attorneys representing a state." *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975). "[C]lients who may assert the privilege include a 'government, State, or political subdivision thereof.'" *Id.* As a client, the State can waive the privilege. Most relevant to this case is the test first announced in *Hearn* and later adopted by Washington courts, which holds that the attorney-client privilege may be waived when the following elements are satisfied: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id.* at 581; *see also First Sec. Bank of Wash. v. Erikson*, 2007 WL 188881, at *2 (W.D. Wash. Jan. 22, 2007) (recognizing Washington's adoption of *Hearn*). In *Hearn*, the court found that state prison officials' assertion of a qualified immunity defense constituted an "affirmative act" that put otherwise protected communications at issue, thus satisfying the first two elements.[2] *Id.*

Here, it is undisputed that Leuzzi was an attorney for the State who advised and represented the State before and during the dependency trial. *See id.* at 2 n.3. It is also undisputed that the attorney-client privilege protects confidential communications between state attorneys and their clients; namely, the State, its subdivisions (DCYF), and its agents. Plaintiffs seek to compel discovery directly from Leuzzi—an attorney—rather than the state clients. Plaintiffs' motion argues that this is permissible because (1) the discovery they seek from Leuzzi concerns their allegations against him as an individual defendant and falls outside the scope of the privilege held

---

[2] The court reasoned that, because qualified immunity requires a showing that an official acted in good faith in carrying out their duties, the legal advice the official received was relevant and put at issue by the assertion of the defense. *Id.* For example, if the official was advised that certain actions would violate a plaintiff's rights, but the official took that action anyway, it would be clear that the official acted in bad faith and would not be entitled to qualified immunity.

by the State; and, (2) that, in any event, the State has waived the privilege under *Hearn* because Leuzzi asserted a qualified immunity defense.[3]  Dkt. 182 at 1-2.  Defendants counter that the discovery Plaintiffs seek is within the scope of the privilege and that only the State can waive it, regardless of the defenses asserted by their attorney Leuzzi.  Dkt. 185 at 1-4.

The Court first finds that the discovery Plaintiffs seek from Leuzzi would require the production of confidential attorney-client communications that fall within the scope of the privilege.  Although Plaintiffs have named Leuzzi as a defendant and brought individual claims against him, Plaintiffs have not further substantiated the premise that Leuzzi acted independently of his role as an attorney.  Leuzzi's alleged conduct, even if accepted as fact, appears to be typical of an attorney advocating for a client, rather than an individual acting to further his own interests.  For example, Plaintiffs allege that "Defendant Leuzzi . . . without basis, sought court orders to medicate the Children."  Dkt. 55, ¶ 47.  Applying to a court for an order related to the State's custody of minor children is typical of an attorney representing DCFY and does not amount to independent conduct by Leuzzi.  Although Plaintiffs claim that Leuzzi was acting on his own initiative in seeking this (and other) orders, Plaintiffs do not appear to have any support for this allegation beyond what they suspect about Leuzzi's motives, which itself is unclear.[4]  Plaintiffs' allegations that Leuzzi conspired with Sanchez and Sterbick to file false declarations similarly appear to describe conduct—namely, advising clients on their testimony—that is typical of an

---

[3] As discussed below, Plaintiffs also advance several other theories of waiver, including that discovery related to Leuzzi's conduct does not fall within the privilege because Leuzzi was acting in an investigative role, rather than an advisory one.  *See* Dkt. 182 at 1-2.

[4] As noted above, Plaintiffs claim that Leuzzi acted on behalf of his "marital community" but do not elaborate further.

attorney. *See id.* ¶¶ 31-33. Accordingly, discovery relevant to Plaintiffs' allegations would implicate privileged attorney-client communications between Leuzzi and agents of the State.

The Court now turns to whether the privilege was waived. As Defendants note, only the client can waive an attorney-client privilege. *Dietz v. Doe*, 131 Wash. 2d 835, 850 (1997) (privilege belongs to client and only he can waive it). The client in this case is the State, and it did not plead a qualified immunity defense. *Desmet v. State*, 200 Wash. 2d 145, 158-59 (2022) (qualified immunity not available to government entities). Therefore, the Court holds that the State has not waived its privilege. Leuzzi's pleading a qualified immunity defense did not effect a waiver of the privilege, because it is not his privilege to waive.[1]  Furthermore, the final element of the Hearn test, that "application of the privilege would [deny] the opposing party access to information vital to his defense," is not met. Id. at 581. The allegations in question center on a conspiracy between Sanchez, Sterbick, and Leuzzi. Sanchez and Sterbick likely possess most or all of the information relevant to Plaintiffs' allegations. Therefore, application of the privilege will not deny Plaintiffs access to information vital to their claims.

In addition to the *Hearn* waiver, Plaintiffs advance several other possible exceptions to the attorney-client privilege that would allow them to obtain discovery from Leuzzi. *See* Dkt. 182. Several of the theories cited—such as the crime-fraud exception and DCFY's fiduciary relationship with the minor children—apply only in circumstances that are clearly not present here. *See United States v. A.G.E. Enterp., Inc.*, 15 F. App'x 439 (9th Cir. 2001) (crime-fraud exception applies when party seeking discovery has made prima facie case that attorney advice was sought to further commission of a crime or fraud); *Seattle NW Secs. Corp. v. SDG Holding Corp., Inc.*, 61 Wash. App. 725, 736-37 (1991) (privilege cannot be asserted between parties who were represented by the same attorney). Other arguments Plaintiffs advance, such as their contention that Leuzzi acted

as a fact investigator or akin to a political official—merely reframe their argument that Leuzzi's conduct falls outside the attorney-client relationship and thus outside the scope of the privilege. The Court has already rejected that argument and found that Plaintiffs' allegations against Leuzzi appear to describe conduct that occurred as part of Leuzzi's representation of the State and its agents.[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel (Dkt. 182) is denied. The parties are directed to submit a joint proposed scheduling order that sets a new date for the discovery cutoff and modifies any other dates that are affected by either this order or the Court's March 16, 2023 minute order (Dkt. 191).

DATED this 21th day of April, 2023.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[5] Furthermore, even if one of the exceptions cited by Plaintiffs applied, Rule 26 states that discovery "shall be limited by the court if it determines that . . . [it] is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(1). As noted above, Plaintiffs can seek discovery on their § 1983 and conspiracy claims from Leuzzi's alleged co-conspirators, Sanchez and Sterbick. Taking discovery from two fact witnesses is undeniably less burdensome than taking discovery from an attorney whose clients are defendants.