The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES MEDICRAFT, *et al.*,<br><br>　　　Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, *et al.*,<br><br>　　　Defendants. | NO. 21-cv-1263<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.　INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Currently pending before the Court is Phoenix's Motion for Partial Summary Judgment, ECF No. 257.[2] Of the four causes of action asserted against it, Phoenix seeks dismissal

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

[2] In total, there are seven pending motions filed by Defendants—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259. The other motions will be addressed by separate orders.

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

- 1

of two—negligence and vicarious liability for infliction of emotional distress. *Id.* Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part Phoenix's motion. The reasoning for the Court's decision follows.

## II.     BACKGROUND

The circumstances of this case required the Court to review an extensive factual and procedural background with multiple parties. The parties are familiar with the factual and legal background of this dispute, and the Court's prior orders have provided additional background in varying contexts, so only a summary of facts most relevant to this motion are provided.

The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and NM—became involved with Washington State Child Protective Services ("CPS") in February 2019. Culp Decl. 3, ECF No. 278-19. The children ranged in age from 1 to 9 years old when removed from Shaylee's care in December 2019 by court order. Kliman Rpt. 1, ECF No. 276-2; Order Placing Children in Shelter Care, ECF No. 247-6. The three older boys (JM, EM, and AM), did not respond well to removal from their mother's care. Mother's Emergency Motion for Return Home, ECF No. 286-1. Defendants have asserted that James coached and encouraged the children's unsafe behaviors in his interactions with them. Social Worker Decl.3, ECF No. 278-19; *see also* Case Note 47006046 (documenting James' encouragement and negative comments about CPS); Whalen Dep. 113, 118, ECF No. 260-6 (describing concerning behaviors that appeared to have been coached). There are multiple reports of JM, AM, and EM assaulting staff members, including

---

[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders. Some exhibits were duplicated across the multiple motions; the Court identifies the specific ECF No. for the exhibit referenced, although it may have been the exhibit related to an accompanying motion.

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

- 2

1   hitting, punching, kicking, spitting, biting, and destroying property as well as trying to run away.

2   Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59, ECF No. 247-7.

3   In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM.

4   Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys

5   were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children

6   being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included

7   photographs of the children with bruises received during DCYF care and reported that a security

8   guard threatened to hit one of the boys with a belt. *Id.* She noted that DCYF "is unable to provide

9   safe and appropriate care for these children." *Id.* The motion was denied. Order Denying Return,

10  ECF No. 247-17. Case notes describe additional incidents involving the young boys and Phoenix

11  security guards that included the requirement to involve law enforcement. *See, e.g.*, Case Notes

12  47125188, 47147206, ECF No. 258 (describing incidents between JM and a Phoenix security

13  guard).

14  The dependency trial was held in September and October 2020, and on October 22, 2020,

15  the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing

16  Dependency, ECF No. 250-19. The children were reunited with their parents ten months after

17  having been removed. Kliman Rpt. 2, ECF No. 276-2. The Medicrafts claim that the children

18  developed serious behavioral issues and signs of trauma because of their removal and abuse

19  suffered while in the State's custody. *Id.* at 2-3.

20  The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021.

21  Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September

1  2021. ECF No. 1.[4] In the operative complaint, Plaintiffs assert 23 causes of action against 11

2  Defendants, including DCYF, Phoenix Protective Corporation, and 9 individuals. Sec. Am. Compl.,

3  ECF No. 55. Relevant to the pending motion, the Medicrafts allege negligent retention of a Phoenix

4  security guard, Mr. Al Marfadi, based on his assault of the Medicraft children, and vicarious liability

5  for intentional and/or negligent infliction of emotional distress. Sec. Am. Compl. ¶¶ 272-79, ECF

6  No. 55.[5] Phoenix moves for partial summary judgment on these claims.

### III.   LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

---

[4] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.

[5] The Medicrafts asserted four causes of action against Phoenix. Sec. Am. Compl., ECF No. 55. In early 2023, they moved to strike Phoenix's affirmative defenses and moved for summary judgment that Phoenix is vicariously liable for any-and-all acts of its employees in relation to the Medicraft children, but the motion was denied. *See* Order, ECF No. 224.

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 4

# IV. DISCUSSION

Phoenix contends that the negligent retention claim must be dismissed because the Plaintiffs have no expert witness and lack admissible evidence to support their claim that Phoenix knew of any misconduct. Def.'s Mot. 3, ECF No. 257. Phoenix also argues that the claim for intentional infliction of emotional distress (also referred to as "outrage") may not be brought when there is an assault claim remedy, and the non-assault allegations are not extreme and outrageous. *Id.* Plaintiffs assert that there are material disputes of fact that preclude summary judgment on these claims. Pls.' Resp. 5, ECF No. 275. The Court shall address each in turn.

### A. Negligent retention claim

"Under Washington law, a negligence action requires proof of four elements: existence of a duty; breach of the duty; a resulting injury; and proximate causation between the breach and the resulting injury." *Cox v. Dep't of Soc.& Health Servs.*, 913 F.3d 831, 839 (9th Cir. 2019) (citing *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 605 (2011)). "A negligent retention claim holds an employer liable when the employer negligently elects to retain an employee and the employee then commits a wrongful act." *Dold v. Snohomish Cnty.*, 649 F. Supp. 3d 1084, 1110–11 (W.D. Wash. 2022), *reconsideration denied*, 2:20-CV-00383-JHC, 2023 WL 1818139 (W.D. Wash. Feb. 7, 2023). "[T]o hold an employer liable for negligently hiring or retaining an employee who is incompetent or unfit, a plaintiff must show that the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover unfitness before hiring or retaining the employee." *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 356, (2018). A plaintiff must also show that the employer's retention of the employee was a proximate cause of the plaintiff's injuries. *Carlsen v. Wackenhut Corp.*, 73 Wn. App. 247, 252–53 (1994).

Phoenix first argues that Plaintiffs have no expert to opine on private security practices and the standard of care related to Phoenix's operations nor on the use-of-force standards. Def.'s Mot. 7-8. However, Phoenix cites no authority to establish that an expert opinion is required under the circumstances of this case. Expert testimony is only required when the issue to be resolved is beyond the expertise of a layperson. *See* Fed. R. Evid. 702. Phoenix also argues that although Plaintiffs assert that Mr. Marfadi assaulted a minor Plaintiff on two occasions, February 17 and 22, 2020, they have no admissible evidence to establish either assault because the records introduced are hearsay. *Id.* at 8.

Case Note 47125188 relates the February 17, 2020 incident, during which JM took his belt and attempted to hit the social worker and the Phoenix security guard, Mr. Marfadi, and succeeded at hitting Mr. Marfadi and then slapped Mr. Marfadi across the face. ECF No. 258 at 5. Mr. Marfadi responded by restraining JM using his arms and upper body, grabbing the back of JM's neck. *Id.* The social worker told Mr. Marfadi not to grab JM by his neck, and Mr. Marfadi let go but kept him restrained for an additional two minutes. *Id.* A supervisor was made aware of the incident by text message. *Id.*

Case Note 47147206 relates the February 20, 2020 incident, during which JM was misbehaving by running around the dining area in the hotel. *Id.* at 7-8. Mr. Marfadi grabbed JM by the arms to move him away from the hot food items, and JM dropped to the ground and began kicking and flailing while yelling at Mr. Marfadi to let go of him. *Id.* Mr. Marfadi pushed JM outside of the lobby into the parking lot, where JM again fell to the ground while kicking and yelling, and Mr. Marfadi let go of JM's arm. *Id.* JM then began running through the parking lot, next to a busy street. *Id.* A social worker reported seeing JM laying on the ground with Mr. Marfadi holding him

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

- 6

down. *Id.* Two security guards then held JM by his arms and walked him to the car. *Id.* When Mr. Marfadi got in the back seat of the car with JM, JM climbed into the front seat and got out of the car. *Id.* Mr. Marfadi then grabbed JM, picked him up and tried to force him to get into the back seat again. *Id.* When JM refused to comply, Mr. Marfadi "appeared to lose control and threw [JM] bodily into the back of the car, where his upper body landed on the floor of the back seat of the car and his legs were on the back seat." *Id.* JM was crying and screaming that his legs were hurt and that the guard had hit his head. *Id.* The social worker and other security guard yelled at Mr. Marfadi to stop and move away from JM, saying "we never grab kids like that." *Id.* The social worker notified law enforcement, who took a report, and requested medical assistance to evaluate JM for injuries. *Id.* The incident was reported, and Phoenix sent out a supervisor to assess the situation and provide a new security guard. *Id.* The Phoenix Security Incident Report also describes the incident, which indicates that a police report was filed. *Id.* at 10.

The Court may consider this evidence when ruling on a summary judgment motion, because it is possible for the evidence to be presented in an admissible form, such as testimony from a witness. *See* Fed. R. Civ. P. 56(c)(4); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony").

Phoenix also responds to many of Plaintiffs' evidentiary proffers with alternate explanations and complaints that the evidence is misrepresented. *See* Reply, ECF No. 283. The conflicting descriptions of the facts relied on by each party illustrate that there are numerous disputes of material fact to be resolved by a jury. Upon reviewing the evidence in the light most favorable to

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

- 7

the Plaintiffs, the Court finds it more appropriate to allow a jury to resolve whether a reasonable security firm would have retained Mr. Marfadi after the initial reported incident. A jury may also resolve whether the incidents were assaultive in nature. Accordingly, the Court denies Phoenix's motion for summary judgment with regard to the negligent retention claim.

## B. Emotional distress claims

In their nineteenth cause of action, Plaintiffs allege vicarious liability for "intentional and/or negligent" infliction of emotional distress. Sec. Am. Compl. ¶¶ 274-79, ECF No. 55. Intentional infliction of emotional distress has different elements from negligent infliction of emotional distress claims, so the Court will address these claims separately.

### 1. Intentional infliction of emotional distress ("IIED")

"To establish a claim for intentional infliction of emotional distress (IIED), a plaintiff must prove: '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" *Munoz v. Bean*, 192 Wn. App. 1060 (2016) (quoting *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003)).

To satisfy the IIED claim, the behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel*, 149 Wn.2d at 196 (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59–60 (1975)). Once extreme or outrageous conduct has been shown, "it can be fairly presumed that severe emotional distress was suffered." *Id.* at 202. "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 113 Wn.2d 612, 630 (1989) (citing *Phillips v.*

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 8

*Hardwick*, 29 Wn. App. 382, 387 (1981)). The Plaintiffs refer the Court to Dr. Kliman's report, stating that "children do not suffer frightening events in a merely linear or additive way; the harm accumulates and grows in more of a logarithmic fashion, until a threshold is finally crossed, causing cumulative trauma." Pls.' Resp. 6 (citing Kliman Rpt., ECF No. 276-2).

The evidence, viewed in the light most favorable to Plaintiffs, reveals that in addition to at least one physical assault, sufficient to require calling law enforcement, these young boys, afraid and vulnerable, experienced threats of being beaten with a belt, humiliation as the result of a bathroom break not being allowed, being forced to stand in the rain without jackets or shoes, being led barefoot across parking-lot asphalt in mid-winter, being confined in empty rooms with security guards at the door, and the use of excessive physical force by the security guards. As such, the Court finds that reasonable minds could differ on whether the complained-of conduct was sufficiently extreme to be presented to a jury. However, this claim is limited to JM, EM, and AM, since Plaintiffs have not presented evidence of extreme and outrageous conduct as it relates to Shaylee.

Phoenix also contends that the IIED claim may be brought only if Plaintiffs have no other tort remedy for recovery. Def.'s Mot. 3, ECF No. 257. Washington courts adopted the definition of the IIED tort, which they referred to as "outrage," from the Restatement (Second) of Torts § 46 (1965). *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987). "The language of the Restatement supports a conclusion that outrage should allow recovery only in the absence of other tort remedies." *Id.* at 62. "[T]he rule stated in this Section has been fully recognized as a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery . . . or the like." Restatement (Second) of Torts § 46, comment b, at 72. Plaintiffs have

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

asserted assault causes of action against Phoenix related to alleged assaults against JM and AM, and against Mr. Marfadi for assault and battery of JM. Sec. Am. Compl. ¶¶ 268-71, 280-83. The IIED claim is brought by Shaylee, JM, EM, and AM. *Id.* ¶¶ 274-79.

Certainly, Plaintiffs may not recover duplicative damages. *See Rice*, 109 Wn.2d at 62 (quoting *Bankhead v. Tacoma*, 23 Wn. App. 631, 638 (1979)) ("[A]n assault claim has long been held to encompass claims for intentional infliction of emotional distress arising out of the assault. Damages for emotional distress may be awarded as part of the assault damages."). The *Rice* court ruled that the trial court had erred in instructing the jury on both causes of action because it allowed for the possibility of double recovery, but the court did not indicate that a plaintiff must elect to pursue assault as opposed to an emotional distress claim prior to the jury instruction phase of the litigation.[6]

Accordingly, Phoenix's motion as it relates to the claim of intentional infliction of emotional distress is denied.

**2. Negligent infliction of emotional distress ("NIED")**

"[T]o establish a claim for negligent infliction of emotional distress (NIED), a plaintiff must prove 'duty, breach, proximate cause, damage, and objective symptomatology.'" Munoz, 192 Wn. App. 1060 (quoting *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 505 (2014)). Unlike IIED claims, the NIED claim's requirement to show "objective [symptomatology]" means symptoms that are "susceptible to medical diagnosis and proved through medical evidence." *Id.* (quoting *Kloepfel*, 149 Wn.2d at 197–98); *see also Hunsley v. Giard*, 87 Wn.2d 424, 433, 436 (1976) ("A

---

[6] Plaintiffs have also alleged abusive acts that a jury may find to be outrageous but do not constitute assault. Pls.' Resp. 6 (citing examples of young boys having their shoes taken as punishment, being held in a bare office, being forced to stand in the rain, and being held without a bathroom break until the child was forced to relieve himself).

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 10

1    further restriction on the issue of liability is the requirement that the mental and emotional

2    suffering, to be compensable, must be manifested by objective symptomatology.").

3          In response to Phoenix's motion, Plaintiffs assert only that they were "emotionally

4    injured," but they do not proffer a medical diagnosis or objective medical evidence to support their

5    claim. Pls.' Resp. 8, ECF No. 275. While it is possible that Plaintiffs have such evidence, they

6    have not identified any such exhibits to the Court in response to this motion. "On summary

7    judgment, 'it is not our task . . . to scour the record in search of a genuine issue of triable fact.'"

8    *Californians for Renewable Energy v. California Pub. Utils. Comm'n*, 922 F.3d 929, 935–36 (9th

9    Cir. 2019) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Therefore, Plaintiffs fail

10   to create a genuine dispute of material fact to bar summary judgment for Phoenix on the NIED

11   claim. Phoenix's motion as it relates to the claim of negligent infliction of emotional distress is

12   granted.

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

- 11

## V. CONCLUSION

For the foregoing reasons, Phoenix's Motion for Partial Summary Judgment, ECF No. 257, is GRANTED IN PART and DENIED IN PART.  The motion is denied with regard to the negligent retention claim and the intentional infliction of emotional distress claim as it relates to JM, AM, and EM; the motion is granted with regard to the negligent infliction of emotional distress claims by Shaylee Medicraft, JM, EM, and AM, and the claim of intentional infliction of emotional distress asserted by Shaylee Medicraft.  The remaining claims shall proceed to trial on April 8, 2024.

DATED this 23rd day of February, 2024.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING IN PART AND DENYING IN PART PHOENIX PROTECTIVE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 12