The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.*,

     Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

     Defendants.

NO. 21-cv-1263

**ORDER GRANTING DCYF's MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Currently pending before the Court is DCYF's Motion for Partial Summary

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 1

1    Judgment as to Plaintiffs' First Cause of Action, ECF No. 259.[2] Having reviewed the materials,[3]

2    the record of the case, and the relevant legal authorities, the Court will grant DCYF's motion. The

3    reasoning for the Court's decision follows.

## II.    BACKGROUND

5        The circumstances of this case required the Court to review an extensive factual and

6    procedural background with multiple parties. The parties are familiar with the factual and legal

7    background of this dispute, and the Court's prior orders have provided additional background in

8    varying contexts, so only a summary of facts relevant to this motion are provided.

9        The Washington State's Department of Children, Youth, and Families ("DCYF") is

10   responsible for delivering family and children's services to preserve families when appropriate and

11   ensure children's health and safety. Ombuds 2019 Rpt. 5, ECF 278-4. Its mission is that "[a]ll

12   Washington's children and youth grow up safe and healthy–thriving physically, emotionally, and

13   educationally, nurtured by family and community."  Job Bulletin 1, ECF No. 267-23. If the court

14   orders the removal of a child from the parents, DCYF becomes the guardian, and its role is to ensure

15   that the child is in a safe placement that is meeting all of their needs. Whalen Dep. 61, ECF No.

16   254-12. The regional placement desk is responsible for placements of children who have been

17   removed from their home. Sterbick Dep. 48-49, ECF No. 254-9. The staff works to find appropriate

18   foster homes, which become licensed for a certain number of children. *Id.* at 45. Multiple factors

19   play a role in finding a placement, including keeping the child connected to their family and

---

[2] In total, there are seven pending motions filed by Defendants—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259.  The other motions will be addressed by separate orders.

[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders. Some exhibits were duplicated across the multiple motions; the Court identifies the specific ECF No. for the exhibit referenced, although it may have been the exhibit related to an accompanying motion.

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 2

community, the age and special needs of a child, the number of children the home is licensed to take in, whether day-care is required, and so on.  *Id.* Children with complex needs, whether mental health issues, or aggressive or destructive behaviors, may be eligible for a placement with a Behavioral Rehabilitation Services ("BRS") provider, who is highly skilled with behavioral issues. Applebee Dep. 142-43, ECF No. 260-19.

The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and NM—became involved with Washington State Child Protective Services ("CPS") in February 2019. Culp Decl. 3, ECF No. 278-19. Intake 4091427 was screened on February 25, 2019, in which the referent alleged neglect of the children, advised that the family had been living in New York and was now living somewhere in the Seattle area, and relayed that there was an active no-contact order as well as an arrest warrant for James for violation of the no-contact order. CPS Assess. ID 72915070, ECF No. 270-5. A dependency petition was filed on April 25, 2019, and the children were temporarily removed from Shaylee's care by court order. Shelter Care Hearing Order, ECF No. 247-5. After an initial shelter care hearing on April 30, 2019, the children were returned to Shaylee's care with conditions, including the requirement for James to abide by the no-contact order. *Id.*

During the following months, as the dependency petition was being reviewed, multiple CPS intakes were received and investigated related to neglect, inappropriate discipline, and violations of the no-contact order. Sterbick Decl. 9, ECF No. 256-8; Sanchez State Court Decl. 2, ECF No. 252-8; *see also* Case Note 46407681, ECF No 252-9; Case Note 46136936, ECF No. 252-10; Case Note 46427965, ECF No. 252-11. Following a staffing and planning meeting on December 5, 2019, a decision was made to again remove the children from Shaylee's care, and an emergency hearing was held on December 9, 2019, during which the King County Superior Court, Juvenile

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Department, issued an Order Placing Children in Shelter Care. Order, ECF No. 247-6. The Order provided for supervised visitation between Shaylee and the children a minimum of three times per week for two hours, and supervised visits between James and the children according to prior order. *Id.* Additional visitation options were to be discussed between Shaylee, the children's Guardian Ad Litem, and DCYF. *Id.* The children ranged in age from 1 to 9 years old when removed.  Kliman Rpt. 1, ECF No. 276-2.

The children did not all get the benefit of stable placements, and especially the three older boys did not respond well to removal from their mother's care. Mother's Emergency Motion for Return Home, ECF No. 286-1.  In January 2020, social worker Elizabeth Culp was assigned to the Medicraft children's case. Culp Dep. 9, ECF No. 254-6. Ms. Culp asserts that James coached and encouraged the children's unsafe behaviors in his interactions with them, and she requested a temporary suspension of his visitation. Social Worker Decl.3, ECF No. 278-19; *see also* Case Note 47006046 (documenting James' encouragement and negative comments about CPS); Whalen Dep. 113, 118, ECF No. 260-6 (describing concerning behaviors that appeared to have been coached). There are multiple reports of JM, AM, and EM assaulting staff members, including hitting, punching, kicking, spitting, biting, and destroying property as well as trying to run away. Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59, ECF No. 247-7. The police were called to the Kent office on multiple occasions, more than one staff member required medical attention, and one afterhours worker suffered permanent damage to her retina when AM hit her in the face from behind while in the car. Social Worker Decl. 2, ECF No. 278-19. On the other hand, NM and MM, aged 1 and 4, were able to stabilize in foster homes fairly quickly. Culp Dep. 184-87, 190, ECF No. 260-5; Whalen Dep. 114-15, ECF No. 260-6.

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

 - 4

1    In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM.

2    Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys

3    were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children

4    being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included

5    photographs of the children with bruises received during DCYF care and reported that a security

6    guard threatened to hit one of the boys with a belt. *Id.* She noted that when she is with the boys,

7    their behavior improved, and then escalates again after she leaves, and DCYF "is unable to provide

8    safe and appropriate care for these children." *Id.* Shaylee also gave notice of her intent to seek return

9    of the two younger children by separate motion. *Id.* Ms. Culp recommended the motion be denied

10   based on the family's history, James' failure to engage in any of the ordered services, and concerns

11   that James was coaching the children's unsafe behaviors. Social Worker Decl., ECF No. 278-19.

12   In addition to reviewing case notes and the pleadings, the court was also provided with a report

13   from Dr. Solchany, who opined that it would be detrimental to the children's psychological health

14   to return them home and that the children would benefit from medication. Order Denying Return,

15   ECF No. 247-17. Shaylee's motion was denied, and the motion for appointment of counsel for the

16   children was also denied. *Id.* Also in February 2020, the no-contact order terminated, and the court

17   denied DCYF's motion to suspend James' visitation rights but warned James to follow the court's

18   orders and correct his behaviors during visits with the children. Order on Visitation, ECF No. 247-

19   15.

20   On February 29, 2020, the Governor proclaimed a State of Emergency for all counties in

21   the State as a result of the COVID-19 outbreak. Proclamation, ECF No. 286-6. This resulted in a

22   suspension of in-person visitation requirements for children in DCYF custody as well as the

23   temporary shutdown of many providers of remedial services. *Id.* Both James and Shaylee had

24   ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

25   - 5

virtual visits with the children three times a week. Culp Court Rpt. 4-6, ECF No. 267-18. A hotel visit was organized with the children and Shaylee while the children were in quarantine awaiting COVID-19 test results, but the children returned to their placements when the negative results were received. Email, ECF No. 264-1.

The fact-finding trial on the dependency petitions had been set for March 2, 2020, but had to be postponed due to the pandemic. Hunter Dep. 18, ECF No. 272-1. In an effort to find a more stable placement for JM and AM, DCYF waived the requirement for finding the children dependent before allowing an out-of-state placement with BRS. *Id.* at 17. At the time, no available in-state BRS program would accept the boys because their behavior was too severe, and DCYF moved for an emergency hearing to request out-of-state placement, but the hearing was denied by the court. Order, ECF No. 247-19; Social Worker Decl., ECF No. 247-7 at 45-50. In-state BRS placements were eventually arranged. Culp Dep. 63-64, ECF No. 260-5.

James and Shaylee relocated to South Carolina after purchasing a home there in February 2020. Culp Court Rpt. 4, ECF No. 267-18. DCYF again moved to suspend James' visitation, and on June 19, 2020, the court found that James had not complied with its order, had continued to disparage DCYF and the social work staff to the children and encourage the children's misbehaviors. Order on Visitation, ECF No. 247-15. The court ordered that Shaylee's visitations should continue with a parent coach, and suspended James' in-person visits. *Id.* In-person visitation was in the process of beginning again but was discontinued at the end of July 2020 when Shaylee relocated to South Carolina. Culp Court Rpt. 6, ECF No. 267-18. James and Shaylee requested to have the dependency trial. *Id.* The dependency trial proceeded in September and October 2020, conducted by Zoom due to the COVID-19 pandemic, and on October 22, 2020, the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing Dependency, ECF

No. 250-19. The Court found that the State had "failed to prove that the Medicraft children are dependent pursuant to RCW 13.34.030(6)(c)." *Id.* at 2. The children were reunited with their parents ten months after having been removed, and they were taken to their new home in South Carolina. Kliman Rpt. 2, ECF No. 276-2. The Medicrafts claim that the children developed serious behavioral issues and signs of trauma because of their removal and abuse suffered while in the State's custody. *Id.* at 2-3.

The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021. Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September 2021. ECF No. 1.[4] The operative complaint is Plaintiffs' Second Amended Complaint, ECF No. 55, which was filed on March 7, 2022.  Plaintiffs assert 23 causes of action against 11 Defendants, including DCYF, Phoenix Protective Corporation, and 9 individuals. Relevant to the pending motion, the Medicrafts allege in the First Cause of Action that NM and MM were separated from their siblings and were damaged by the deprivation of their right to see their siblings. Sec. Am. Compl. ¶¶ 155-56, ECF No. 55.[5] DCYF moves for summary judgment on this claim.

## III.    LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162

---

[4] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.

[5] The Medicrafts asserted 7 causes of action against DCYF.  Sec. Am. Compl., ECF No. 55. In early 2023, the Medicrafts moved for partial summary judgment against DCYF, but the motion was denied. *See* Order, ECF No. 210.

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## IV.    DISCUSSION

DCYF contends that the Court should dismiss the First Cause of Action—Deprivation of NN and MN's Sibling Visits—as a matter of law because Washington State law specifically authorizes separate placements of minor children involved in the juvenile court dependency process. Def.'s Mot. 5, ECF No. 259.  The Medicrafts argue that the Superior Court ordered that all the children be placed at "**a facility** licensed pursuant to RCW 74.15.030 or in **a home** not required to be licensed pursuant to that section." Pls.' Resp. 6, ECF No. 277 (quoting Order Placing Children in Shelter Care ¶ 3.3, ECF No. 247-6 (with added emphasis)). They assert that the decision to place NM and MM separately from each other and from their siblings flouts the Superior Court's order and fails to abide by professional practices.  *Id.* at 7. They also assert that denial of sibling visitation is a violation of DCYF's own stated policy that "[c]hildren placed apart from their siblings **will have two or more face-to-face visits or contacts per month**, unless there is an approved exception," as well as a violation of RCW § 13.34.025(1). *Id.* (quoting DCYF Policies and Procedures No. 4254 (with added emphasis)).

The Superior Court's Order Placing Children in Shelter Care did not specify that all children be placed together but used the exact phrasing of "shelter care," defined as "temporary

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 8

physical care in a facility licensed pursuant to RCW 74.15.030 or in a home not required to be licensed pursuant to RCW 74.15.030." RCW § 13.34.030 (24). RCW 74.15.030 gives the secretary the power and duty to adopt and publish minimum requirements for licensing, investigate any person's character, suitability, and competence to provide foster care, and issue, revoke, or deny licenses, among other things. The Superior Court's Order cannot reasonably be read to require that all children must be placed together. Further, as noted by DCYF, the Medicrafts' own motions to the state court acknowledge that the children could be placed separately.  *See* Mother's Emergency Motion for Return Home, ECF No. 286-1 (seeking return of JM, AM, and EM while leaving MM and NM in their existing separate placements); Order Denying Return, ECF No. 247-17 (leaving the children in separate placements and directing the parties to work towards reunification).

The Medicrafts alleged that NM and MM were separated from their siblings contrary to the ruling in *Braam v. State of Washington*, 150 Wn.2d 689 (2003).  Sec. Am. Compl. ¶ 155. In *Braam*, the Washington Supreme Court recognized that "foster children have a constitutional substantive due process right to be free from unreasonable risks of harm and a right to reasonable safety." 150 Wn.2d at 700. DCYF, "as custodian and caretaker of foster children must provide conditions free of unreasonable risk of danger, harm, or pain, and must include adequate services to meet the basic needs of the child."  *Id.* Liability attaches "only when [the child's] care, treatment, and services 'substantially depart from accepted professional judgment, standards or practice.'" *Id.* at 704. The *Braam* court cautioned against a "mechanical application" of the standard, noting that whether the state's actions were reasonable "must be determined by balancing . . . liberty interests against the relevant state interests." *Id.* (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)). "If the decisions did not substantially depart from accepted professional judgment,

standards, or practice, then the substantive due process clause was not offended, even if harm resulted to an individual child." *Id.* at 706.

DCYF notes that under Washington law, a state juvenile court may place minor children in separate homes from their siblings and may set terms and conditions of parental, sibling, and family visitation based on children's placements.  Def.'s Mot. 7-8 (citing RCW § 13.34.130, and § 13.34.065). As such, a claim that DCYF separated siblings or restricted sibling visits does not substantially depart accepted professional standards or practices.

Further, with regard to the Medicraft's allegations that the children were not afforded the sibling visits to which they were entitled, the records reveal that NM and MM had regular in-person sibling visits prior to the March 2020 COVID-19 pandemic. Culp Decl. ¶ 5, ECF No. 285; FamLink Summary Rpt., ECF Nos. 278-42, 278-43. The pandemic resulted in the emergency suspension of in-person visitations and DCYF was directed to develop policies regarding video visitations, which it did. ECF Nos. 286-5, 286-6, 286-7, 286-8. As Ms. Culp described, the remote video visitations also occurred, although she noted that the older children were understandably often not interested in participating in remote video visitations with their then two-year-old sibling. Culp Decl. ¶¶ 9-11, ECF No. 285.

The Medicrafts fail to present a genuine issue of material fact that would prevent this Court from granting summary judgment to DCYF on the claim that NM and NN were deprived of their rights to sibling visits. Accordingly, the Court will grant DCYF's motion, and the first cause of action will be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Washington State Department of Children, Youth, and Families' Motion for Partial Summary Judgment as to Plaintiffs' First Cause of Action, ECF No. 259, which refers to Deprivation of NN and MN's Sibling Visits, is GRANTED. The remaining causes of action asserted against the State shall proceed to trial on April 8, 2024.

DATED this 23rd day of February, 2024.


_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DCYF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- 11