The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.*,

    Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

    Defendants.

NO. 21-cv-1263

**ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Defendant Tabitha Pomeroy was a social worker in a supervisory position in Child Family Welfare Services, and her Motion for Summary Judgment, ECF No. 249, is pending before

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 1

the Court.[2] Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant Ms. Pomeroy's motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

The circumstances of this case required the Court to review an extensive factual and procedural background with multiple parties. The parties are familiar with the factual and legal background of this dispute, and the Court's prior orders have provided additional background in varying contexts, so only a summary of facts relevant to this motion are provided.

The Washington State's Department of Children, Youth, and Families ("DCYF") is responsible for delivering family and children's services to preserve families when appropriate and ensure children's health and safety. Ombuds 2019 Rpt. 5, ECF 278-4. The State is divided into regions that are run by Regional Administrators. Hunter Dep. 7, ECF No. 272-1. King County is Region 4, which is further divided into six field offices, each overseen by Area Administrators, who report to the Deputy Regional Administrator. *Id.*; Applebee Dep. 9, ECF No. 250-1. King County also has three Regional Area (or Program) Administrators who provide support to all of King County for the after-hours program, adoption program, and the placement desk. Applebee Dep. 9-10. About 2,000 children were in Region 4 care during the time of the events at issue in this case. *Id.* at 10. The Kent field office, because it is a very large office with a heavy caseload, is run by two Area Administrators—Shae Hopfauf, Kent East, and Cleveland King, Kent South. Hunter Dep. 7; Sterbick Dep. 67, ECF No. 256-2; Sanchez Dep. 22. ECF No. 250-5. From 2019 to 2022, Tabitha

---

[2] In total, Defendants filed seven motions—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259. The other motions either have been or will be addressed by separate orders.

[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders.

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 2

Pomeroy served as the Area Administrator of the Martin Luther King Jr. ("MLK") office. Pomeroy Dep. 9, ECF No. 250-2.

If the court orders the removal of a child from the parents, DCYF becomes the guardian, and its role is to ensure that the child is in a safe placement that is meeting all of their needs. Whalen Dep. 61, ECF No. 254-12. The regional placement desk is responsible for placements of children who have been removed from their home. Sterbick Dep. 48-49, ECF No. 254-9. The staff works to find appropriate foster homes, which become licensed for a certain number of children. *Id.* at 45. Multiple factors play a role in finding a placement, including keeping the child connected to their family and community, the age and special needs of a child, the number of children the home is licensed to take in, whether day-care is required, and so on. *Id.* If a child cannot be placed by late afternoon, an after-hours request is submitted to the regional after-hours program to ensure there will be after-hours supervision, and a hotel organized that will accommodate out-of-placement children. *Id.* at 33. The after-hours program is managed out of the DCYF Kent office. Pomeroy Dep. 29-30, ECF No. 250-2. Children with complex needs, whether mental health issues, or aggressive or destructive behaviors, may be eligible for a placement with a Behavioral Rehabilitation Services ("BRS") provider, who is highly skilled with behavioral issues. Applebee Dep. 142-43, ECF No. 260-19.

The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and NM—became involved with Washington State Child Protective Services ("CPS") in February 2019. Culp Decl. 3, ECF No. 278-19. Intake 4091427 was screened on February 25, 2019, in which the referent alleged neglect of the children, advised that the family had been living in New York and was now living somewhere in the Seattle area, and relayed that there was an active no-contact order as well as an arrest warrant for James for violation of the no-contact order. CPS Assess. ID

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT
- 3

72915070, ECF No. 270-5. The intake was initially assigned to one of the Seattle offices, but because the Medicraft family were located in a different geographic service area, the case was transferred to the Kent office and assigned to Tanessa Sanchez to investigate. Sanchez Dep. 21-22, ECF No. 250-5. Allegations of neglect were deemed founded, and the case was transferred to Child Family Welfare Services. *Id.* A dependency petition was filed on April 25, 2019, and the children were temporarily removed from Shaylee's care by court order. Shelter Care Hearing Order, ECF No. 247-5. After an initial shelter care hearing on April 30, 2019, the children were returned to Shaylee's care with conditions, including the requirement for James to abide by the no-contact order. *Id.* A CFWS social worker in the Kent office worked with the family to provide services. Sterbick Dep. 11, 24-25, ECF No. 256-2.

During the following months, as the dependency petition was being reviewed, multiple CPS intakes were received and investigated related to neglect, inappropriate discipline, and violations of the no-contact order. Sterbick Decl. 9, ECF No. 256-8; Sanchez State Court Decl. 2, ECF No. 252-8; *see also, e.g.*, Case Note 46407681, ECF No 252-9; Case Note 46136936, ECF No. 252-10; Case Note 46427965, ECF No. 252-11. Following a staffing and planning meeting on December 5, 2019, a decision was made to again remove the children from Shaylee's care, and an emergency hearing was held on December 9, 2019, during which the King County Superior Court, Juvenile Department, issued an Order Placing Children in Shelter Care. ECF No. 247-6. The children ranged in age from 1 to 9 years old when removed. Kliman Rpt. 1, ECF No. 276-2.

The children did not all get the benefit of stable placements, and especially the three older boys did not respond well to removal from their mother's care. Mother's Emergency Motion for Return Home, ECF No. 286-1. In January 2020, social worker Elizabeth Culp in the DCYF Kent office was assigned to the Medicraft children's case. Culp Dep. 9, 45, ECF No. 254-6. There are

multiple reports of JM, AM, and EM assaulting staff members, including hitting, punching, kicking, spitting, biting, and destroying property as well as trying to run away. Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59, ECF No. 247-7. The police were called to the Kent office on multiple occasions, more than one staff member required medical attention, and one after-hours worker suffered permanent damage to her retina when AM hit her in the face from behind while in the car. Social Worker Decl. 2, ECF No. 278-19. On the other hand, NM and MM, aged 1 and 4, were able to stabilize in foster homes fairly quickly. Culp Dep. 184-87, 190, ECF No. 260-5; Whalen Dep. 114-15, ECF No. 260-6.

The lack of stable placements resulted in almost daily changes to the boys' sleeping arrangements. *See* FamLink Summary Rpt., ECF No. 264-2 (reporting placement changes); Email, ECF No. 264-3 (listing Region 4 placement exception days for Medicraft children). During the time that the boys were on night-to-night placements, some of which were in hotels supervised by a social worker, there were also reports of the boys staying overnight in a vehicle with a social worker after being kicked out of a motel room for bad behavior. *See, e.g.*, Case Notes 47015444, 47017994, ECF No. 267-25.

In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM. Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included photographs of the children with bruises received during DCYF care. *Id.* She also reported that JM had slept on the floor at the Kent DCYF office on February 5, 2020. *Id.* She noted that when she is with the boys, their behavior improved, and then escalated again after she left, and DCYF "is unable to provide safe and appropriate care for these children." *Id.* Shaylee also gave notice of her intent

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT
- 5

to seek return of the two younger children by separate motion. *Id.* Ms. Culp recommended the motion be denied based on the family's history, James' failure to engage in any of the ordered services, and concerns that James was coaching the children's unsafe behaviors. Social Worker Decl., ECF No. 278-19.  In addition to reviewing case notes and the pleadings, the court was also provided with a report from Dr. Solchany, who opined that it would be detrimental to the children's psychological health to return them home and that the children would benefit from medication. Order Denying Return, ECF No. 247-17. Shaylee's motion was denied, and a motion for appointment of counsel for the children was also denied. *Id.*

On February 29, 2020, the Governor proclaimed a State of Emergency for all counties in the State as a result of the COVID-19 outbreak. Proclamation, ECF No. 286-6.  This resulted in a suspension of in-person visitation requirements for children in DCYF custody as well as the temporary shutdown of many providers of remedial services. *Id.* The fact-finding trial on the dependency petitions that had been set for March 2, 2020, had to be postponed. Hunter Dep. Ex. 18, ECF No. 272-1. In an effort to find a more stable placement for JM and AM, Assistant Secretary, Kwesi Booker, waived the requirement for finding the children dependent before allowing an out-of-state placement with BRS. *Id.* at 2. At the time, no available in-state BRS program would accept the boys because their behavior was too severe, and DCYF moved for an emergency hearing to request out-of-state placement, but the hearing was denied by the court. ECF No. 247-19; Social Worker Decl., ECF No. 247-7 at 45-50. In-state BRS placements were eventually arranged. Culp Dep. 63-64, ECF No. 260-5.

The dependency trial ultimately proceeded in September and October 2020, conducted by Zoom due to the COVID-19 pandemic, and on October 22, 2020, the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing Dependency, ECF No. 250-19. The

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 6

1  Court found that the State had "failed to prove that the Medicraft children are dependent pursuant
2  to RCW 13.34.030(6)(c)." *Id.* at 2. The children were reunited with their parents ten months after
3  having been removed, and they were taken to their new home in South Carolina. Kliman Rpt. 2,
4  ECF No. 276-2. The Medicrafts claim that the children developed serious behavioral issues and
5  signs of trauma because of their removal and abuse suffered while in the State's custody. *Id.* at 2-
6  3.

7          The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021.
8  Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September
9  2021. ECF No. 1.[4] The operative complaint is Plaintiffs' Second Amended Complaint, ECF No.
10 55, which was filed on March 7, 2022. Plaintiffs assert 23 causes of action against 11 Defendants,
11 including DCYF, Phoenix Protective Corporation, and 9 individuals. Relevant to the pending
12 motion, the Medicrafts assert the Fifteenth Cause of Action—Deprivation of JM, EM, and AM's
13 Rights Under 42 U.S.C. § 1983 and *Braam*[5]—against Defendant Tabitha Pomeroy. Sec. Am.
14 Compl. ¶¶ 263-67, ECF No. 55. Ms. Pomeroy moves for summary judgment on this cause of action.

### III.    LEGAL STANDARD

16         "Summary judgment is appropriate when, viewing the evidence in the light most favorable
17 to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is
18 entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)
19 (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162
20 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying

---

[4] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.
[5] Referring to *Braam v. State of Washington*, 150 Wn.2d 689 (2003).

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT
- 7

portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## IV.   DISCUSSION

Plaintiffs allege that JM, AM, and EM each had a substantive due process interest in being free from unreasonable risk of harm, and Ms. Pomeroy, as an agent of the State, failed to keep them free from risk of harm, specifically by having a policy and/or custom of forcing children to sleep in cars as punishment. Sec. Am. Compl. ¶¶ 264-65, ECF No. 55. Plaintiffs assert that DCYF regularly put AM and JM in "placement exception" lodgings, including hotels, offices, and vehicles, and changed JM's sleeping arrangements almost every night.  Pls.' Resp. 4, ECF No. 262 (citing Exs. A-C, N, ECF Nos. 264-1–264-3, 264-14). Plaintiffs contend that Ms. Pomeroy may be held liable under 42 U.S.C. § 1983 and *Braam* for supervisory negligence. *Id.* at 6-7.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute provides that "[e]very person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Courts have observed that § 1983 is not itself the source of substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S.

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT
- 8

137, 144 n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*

Here, Plaintiffs allegations are not a model of clarity, but their reference to "fundamental liberty interests and a substantive due process interest in being free from unreasonable risk of harm," Sec. Am. Compl. ¶ 264, appears to be rooted in the Fourteenth Amendment's Due Process Clause. The Due Process Clause provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs also reference *Braam* in conjunction with § 1983. In *Braam*, the Washington Supreme Court recognized that "foster children have a constitutional substantive due process right to be free from unreasonable risks of harm and a right to reasonable safety. To be reasonably safe, the State, as custodian and caretaker of foster children must provide conditions free of unreasonable risk of danger, harm, or pain, and must include adequate services to meet the basic needs of the child." 150 Wn.2d at 700. *See also* RCW § 13.34.020 (declaring that the "right of a child to basic nurturing includes the right to a safe, stable, and permanent home.").

A plaintiff must also establish that the alleged violation was caused by the conduct of a person acting under the color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Here, the disputed issue is whether Ms. Pomeroy's conduct caused the children's alleged deprivation of rights. Ms. Pomeroy asserts that not only did she did not personally cause any injury, but she was not involved in or know of any mistreatment of the Medicraft children since their case was administered by a different field office. Def.'s Mot. 8-9, ECF No. 249. As Area Administrator for the MLK office, she did not interact with the Medicrafts, who were handled by the Kent office. *Id.* at 8.

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 9

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) ("Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them."). In other words, "personal participation" is not strictly required for § 1983 liability; "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Murguia v. Langdon*, 61 F.4th 1096, 1107 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553 (2024) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Moreover, for liability to attach, supervisors must have actual supervisory authority over the government actor who committed the alleged violations. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).

The Supreme Court has ruled that merely negligent actions or omissions by state officials do not "deprive" a person of life, liberty, or property within the meaning of the Fourteenth Amendment, and thus are not actionable under § 1983. *Daniels v. Williams*, 474 U.S. 327, 328, 332 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Similarly, under *Braam*, more than

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT
- 10

negligence is required. 150 Wn.2d at 700. Further, "the mere failure to perform a legally required act is [not] grounds for § 1983 liability based on a substantive due process violation." *Murguia*, 61 F.4th at 1108.

Plaintiffs' allegation of supervisory negligence is insufficient to establish a constitutional deprivation. Plaintiffs contend that DCYF's records demonstrate that "Ms. Pomeroy was part of the "Weekly Night to Night Staffing" meetings on January 24, 2020, January 31, 2020, and April 3, 2020, which specifically discussed the overnight disposition of Plaintiffs AM, EM, JM, and MM." Pls.' Resp. 5, ECF No. 262 (citing Exs. E-G, ECF Nos. 264-5–264-7). Plaintiffs also note that Ms. Pomeroy frequently acted as the on-call supervisor for staff carrying out placement exceptions). *Id.* (citing Exs. H-K, ECF Nos. 264-8–264-11).

Plaintiffs' evidence fails to establish that Ms. Pomeroy was in a supervisory position vis-à-vis the Medicraft children. Plaintiffs' exhibits E, F, and G appear to be records of conference calls with a topic "Weekly Night to Night Staffing," with attachments referencing Medicraft children along with others, and in which Ms. Pomeroy is listed as an attendee. ECF Nos. 264-5–264-7. Exhibit G includes additional information, which includes the telephone dial-in information, and 5–10-minute time periods set aside for "staffing" the children listed during that time period. ECF No. 264-7.  The first time period refers to the Medicraft children, with the names of Kent office personnel, social workers, M. King and Tabitha Culp, Supervisor J'aime Allbee, and Kent South Area Administrator Cleveland King. *Id.* Ms. Pomeroy, as Area Administrator for the MLK Office, did not oversee the Kent office, the regional after-hours program, or the placement desk. Applebee Dep. 9-10, ECF No. 250-1; Pomeroy Dep. 9, ECF No. 250-2. Ms. Pomeroy explained that the weekly "night to night" staffing meetings were conducted to address potential barriers to stable long-term placements, and the social worker handling a case, together with the social worker's

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 11

supervisor, and the respective area administrator "would be assigned to a specific time slot to call in and discuss any potential barriers to stable long term placements for those particular children with placement desk staff." Pomeroy Decl. ¶¶ 11-12, ¶ 17, ECF No. 274. Ms. Pomeroy was an invitee to meetings only when a child (or children) from the MLK office was to be discussed and played no role in other cases from other offices also scheduled for discussion during that meeting. *Id.* ¶¶ 14-15, ¶¶ 18, 20; *see also* Weekly Night to Night Staffing – March 27, 2020, ECF No. 274-1 (showing the attachments for Medicraft children, but Ms. Pomeroy is not an attendee); Weekly Night to Night Staffing – April 10, 2020, ECF No. 274-2 (showing that the Medicraft children were scheduled for 9:00-9:10, with social workers M. King, Tabitha Culp, Supervisor J'aime Allbee, and Area Administrator Cleveland King, and Ms. Pomeroy is not on the invite list). Plaintiffs' exhibits do not establish participation or supervision by Ms. Pomeroy in the Medicraft children's placements.

Plaintiffs' exhibits H, I, and J are emails from the Kent office supervisor, J'aime Allbee, relating to arrangements for Medicraft children, that show Ms. Pomeroy listed as the On Call AA. ECF Nos. 264-8–264-10. Ms. Pomeroy explains that all area administrators serve as emergency area administrators who serve on-call on a rotating basis. Pomeroy Decl. ¶ 22, ECF No. 274. In this role, the individual serves as a point of contact for any emergency issues encountered during off-hours until matters could be more fully addressed during regular business hours by the assigned staff handling the particular case. *Id.* These emails informed the after-hours social workers that she was serving as the on-call area administrator for all King County DCYF matters on that date. *Id.* ¶¶ 23-24. Plaintiffs' exhibit K is an email from an after-hours supervisor and informs the addressees that Ms. Pomeroy was scheduled to serve as the emergency on-call area administrator for that date. ECF No. 264-11; Pomeroy Decl. ¶¶ 27-28, ECF No. 274. While she was on call, Plaintiffs have

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 12

made no showing that she was ever contacted about any emergency. Plaintiffs' exhibits fail to establish participation or supervision by Ms. Pomeroy in the Medicraft children's placements or in any deprivation of rights.[6]

In their complaint, Plaintiffs alleged that Ms. Pomeroy had a "policy and/or custom of forcing children to sleep in cars as punishment." Sec. Am. Compl. ¶¶ 264-66, ECF No. 55. The allegation is based on a January 2021 anonymous whistleblower referral, which asked whether it was true that children were having to sleep in cars or on the floors in state offices. Compl. Ex. B, ECF No. 1-1 at 31-36. Plaintiffs do not discuss this allegation in their response brief. The Court notes that the document referenced in their initial complaint was dated in early January 2021 and refers to a staff meeting that was held in December 2020, and the referral was rejected. Compl. Ex. B, ECF No. 1-1 at 31-36; *see also* Pomeroy Dep. 51-52, 55-56, ECF No. 250-2 (indicating that the matter was a misrepresentation and was neither substantiated nor investigated further). At that time, the Medicraft children had already been reunited with their parents. Further, the Area Administrator role does not make policies or procedures for a region. Pomeroy Dep. 56-57, ECF No. 250-2.

Plaintiffs briefly noted a case note from January 2020, describing JM awaking in the back seat of a car at 4:00 a.m. at the Kent office. Pls.' Resp. 4 n.2, ECF No. 262 (citing Ex. N, ECF No. 264-14). A social worker had picked JM up at the Bellevue office at midnight, and JM went to sleep in the back seat of the car. *Id.* The social worker explained to JM that he must be on his best behavior to stay in hotel rooms, then drove JM back to the Bellevue office, where he slept the rest

---

[6] The Court notes that Plaintiffs also provided an exhibit showing that Ms. Pomeroy approved a cost expenditure related to MM. Pls.' Resp. 5, ECF No. 262 (citing Ex. L, ECF No. 264-12). The exhibit does not evidence that Ms. Pomeroy had any involvement in JM, EM, or AM's overnight placements.

ORDER GRANTING TABITHA POMEROY'S MOTION FOR SUMMARY JUDGMENT

- 13

of the night. *Id.* In another case note, a social worker took over supervision of EM and AM at the Kent office parking lot, where both children were asleep and moved to a different car. *Id.* The social worker "explained the reason they got kicked out of the hotel" was due to their behavior. *Id.* Certainly, both events described are disturbing, but Plaintiffs have provided no connection to Ms. Pomeroy or the MLK office.

In sum, Plaintiffs' allegation of supervisory negligence is insufficient to establish a constitutional deprivation, and Plaintiffs fail to provide evidence to the Court that would create a genuine issue of fact as to Ms. Pomeroy's liability to the Medicrafts for any actual involvement in JM, EM, or AM's placement exceptions. Accordingly, the Court will grant Ms. Pomeroy's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendant Tabitha Pomeroy's Motion for Summary Judgment, ECF No. 249, is GRANTED.

DATED this 4th day of March, 2024.

Barbara Jacobs Rothstein
U.S. District Court Judge