The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.*,

      Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

      Defendants.

NO. 21-cv-1263

**ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Defendant Tanessa Sanchez was the Child Protective Services investigator assigned to the Medicraft case, and her Motion for Summary Judgment, ECF No. 251, is pending

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

before the Court.[2] Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part Ms. Sanchez's motion. The reasoning for the Court's decision follows.

## II.      BACKGROUND

The circumstances of this case required the Court to review an extensive factual and procedural background with multiple parties. The parties are familiar with the factual and legal background of this dispute, and the Court's prior orders have provided additional background in varying contexts, so only a summary of facts relevant to this motion are provided.

The Washington State's Department of Children, Youth, and Families ("DCYF") is responsible for delivering family and children's services to preserve families when appropriate and ensure children's health and safety. Ombuds 2019 Rpt. 5, ECF 278-4. The State is divided into regions that are run by Regional Administrators. Hunter Dep. 7, ECF No. 272-1. King County is Region 4, which is further divided into six field offices, each overseen by Area Administrators, who report to the Deputy Regional Administrator. *Id.*; Applebee Dep. 9, ECF No. 250-1. King County also has three Regional Area (or Program) Administrators who provide support to all of King County for the after-hours program, adoption program, and the placement desk. Applebee Dep. 9-10. About 2,000 children were in Region 4 care during the time of the events at issue in this case. *Id.* at 10. The Kent field office, because it is a very large office with a heavy caseload, is run by two

---

[2] In total, Defendants filed seven motions—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259.  The other motions either have been or will be addressed by separate orders.

[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 2

Area Administrators—Shae Hopfauf, Kent East, and Cleveland King, Kent South. Hunter Dep. 7; Sterbick Dep. 67, ECF No. 256-2; Sanchez Dep. 22, ECF No. 250-5.

Child Protective Services ("CPS"), also organized by geographic areas, investigates allegations of child abuse and neglect that come in from the community. Sanchez Dep. 10, 21. These allegations are in the form of an "intake" or "referral." Sterbick Dep. 25, ECF No. 252-2. The CPS investigator stays assigned to the case until the completion of the investigation, or until the family moves to a different office area, at which time, the case will transfer to an investigator in the new office. Sanchez Dep. 10. The investigator has face-to-face contact with the child and tries to work with the family to determine if they need services, and the investigator may file a dependency petition before the investigation is completed. *Id.* at 25.

A Child Family Welfare Services ("CFWS") social worker takes over cases once CPS has filed a dependency petition on a child, even while the CPS investigation continues. *Id.* at 11, 25. The social worker's role is to start working with the family, providing services, helping with referrals for services, providing concrete goods, and engaging with them to support reunification if possible, and provide stable out-of-home placements. *Id.*; Culp Dep. 62, ECF No. 254-6. Children may not be removed from their parents without a court order or a protective custody order. Sterbick Dep. 73. If the court orders the removal of a child from the parents, DCYF becomes the guardian and its role is to ensure that the child is in a safe placement that is meeting all of their needs. Whalen Dep. 61, ECF No. 254-12. A Guardian Ad Litem ("GAL") may be appointed by the court to advocate for the best interests of children in these situations. Whalen Dep. 72, ECF No. 252-17.

The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and NM—became involved with Washington State Child Protective Services ("CPS") in February

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 3

2019. Culp Decl. 3, ECF No. 278-19. Intake 4091427 was screened on February 25, 2019, in which the referent alleged neglect of the children, advised that the family had been living in New York and was now living somewhere in the Seattle area, and relayed that there was an active no-contact order as well as an arrest warrant for James for violation of the no-contact order. CPS Assess. ID 72915070, ECF No. 270-5. The referent indicated concern that Shaylee and the children were forced to relocate and were homeless. *Id.* The intake was initially assigned to one of the Seattle offices, but because the Medicraft family were located in a different geographic service area, the case was transferred to the Kent office and assigned to Tanessa Sanchez to investigate. Sanchez Dep. 21-22, ECF No. 250-5. Ms. Sanchez's investigation led to findings that James was in contact with Shaylee and the children in violation of the no-contact order that had been issued in the New York Family Court, he had not completed the court-ordered services in New York,[4] and Shaylee was not accepting the social worker's services that would help remedy the situation. *Id.* Allegations of neglect were deemed founded, and the case was transferred to Child Family Welfare Services. *Id.*

A dependency petition was filed on April 25, 2019, and the children were temporarily removed from Shaylee's care by court order. Shelter Care Hearing Order, ECF No. 247-5. After an initial shelter care hearing on April 30, 2019, the children were returned to Shaylee's care with conditions that included allowing contact between the children and their New York attorney, cooperation with the New York pending case, a requirement to follow the no-contact order, no visitation granted to James, and the requirement to cooperate with the shelter care's services,

---

[4] Conditions included James' mandatory participation and successful completion of a court approved 26-week anger management course as well as a psychiatric evaluation and compliance with aftercare treatment recommendations. NY Court Docs. 36, ECF No. 247-4.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 4

including counselling for all the children and Shaylee. *Id.* Shaylee and the children moved into the Solid Ground shelter, the school-age children attended school, and Shaylee was referred to and completed two "Homebuilders" in home services. Sterbick Decl. 8-9, ECF No. 256-8; Email, ECF No. 267-20. A CFWS social worker worked with the family to provide services, and Ms. Sanchez continued in her role as CPS investigator until November 2019. Sterbick Dep. 11, 24-25, ECF No. 256-2. In July 2019, shortly after the New York court referred the Medicraft case to Washington State, Virginia Whalen was appointed as Guardian Ad Litem for the children. Whalen Dep. 21, ECF No. 252-17.

In August 2019, Shaylee called the Attorney General's Office requesting to have the no-contact order between her and James dropped, and the parties agreed to allow James to begin supervised visits with the children. Sterbick Decl. 10, ECF No. 256-8. In September 2019, a referral was received from the elementary school, suspecting that James was having unauthorized and unsupervised contact with the children and informing DCYF that the children were fearful that CPS would take them away because Shaylee would threaten to call CPS and to withhold visits with their father as forms of punishment. *Id.* In November 2019, Ms. Sanchez reported to her replacement CPS investigator that she had seen a man she suspected was James with the children at a Walmart store. Sanchez Dep. 112-14, ECF No. 252-3; Sanchez State Court Decl. 4-5, ECF No. 252-8. She later identified that it was James that she had seen with the children. *Id.* Shaylee started working for Amazon on the night shift in November 2019, and at some point, Shaylee and the children moved out of the shelter into a one-bedroom motel room. Case Note 46863099, ECF No. 256-7 at 8-9; Email, ECF No. 267-20.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

Meanwhile, Assistant Attorney General Leuzzi, on behalf of DCYF, was actively working on the dependency petition. On September 17, 2019, a Subpoena Duces Tecum was issued to the New York Family Law Court clerk requesting certified copies of all petitions and orders related to the Medicraft case in New York. Subpoena, ECF No. 247-4 at 57-59.  AAG Leuzzi held a staffing and planning meeting on December 5, 2019 to discuss the Medicraft case.  Sterbick Dep. 65, 72, ECF No. 252-2; Email, ECF No. 267-24. Attending the meeting, at a minimum, were AAG Leuzzi, Ms. Sterbick, Area Administrators Cleveland King and Shae Hopfauf, supervisors and a social worker from the Kent South office. Sterbick Decl. 67-68, ECF No. 256-2; Dependency Trial Tr., Sanchez 6-7, ECF No. 252-14. Ms. Sanchez attended part of the meeting. *Id.* The next day, AAG Leuzzi filed a notice of an emergency hearing to be held on December 9, 2019, seeking findings and entry of an order permitting DCYF to place the children in Licensed Foster Care.  Certification of Emergency Hr'g, ECF No. 252-15. On the same day, Ms. Hopfauf directed Ms. Sterbick to remove the children from Shaylee's care. Sterbick Dep. 69, ECF No. 252-2. The children ranged in age from 1 to 9 years old when removed.  Kliman Rpt. 1, ECF No. 276-2. The hearing was held on December 9, 2019 with James, Shaylee, their attorneys, Ms. Sterbick, Ms. Whalen, AAG Leuzzi, and the CASA attorney. Order, ECF No. 247-6. The King County Superior Court, Juvenile Department, issued an Order Placing Children in Shelter Care, finding that the circumstances, including James' violation of the Protection Order and flight risk, presented a serious threat of harm to the children. *Id.* The Order included supervised visitation between Shaylee and the children a minimum of three times per week for two hours, and supervised visits between James and the children according to the prior order. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 6

The children did not all get the benefit of stable placements, and especially the three older boys did not respond well to removal from their mother's care. Mother's Emergency Motion for Return Home, ECF No. 286-1. In January 2020, social worker Elizabeth Culp in the DCYF Kent office was assigned to the Medicraft children's case. Culp Dep. 9, 45, ECF No. 254-6. There are multiple reports of JM, AM, and EM assaulting staff members, including hitting, punching, kicking, spitting, biting, and destroying property as well as trying to run away. Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59, ECF No. 247-7. The police were called to the Kent office on multiple occasions, more than one staff member required medical attention, and one after-hours worker suffered permanent damage to her retina when AM hit her in the face from behind while in the car. Social Worker Decl. 2, ECF No. 278-19. On the other hand, NM and MM, aged 1 and 4, were able to stabilize in foster homes fairly quickly. Culp Dep. 184-87, 190, ECF No. 260-5; Whalen Dep. 114-15, ECF No. 260-6.

In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM. Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included photographs of the children with bruises received during DCYF care. *Id.* She noted that when she is with the boys, their behavior improved, and then escalated again after she left, and DCYF "is unable to provide safe and appropriate care for these children." *Id.* Shaylee also gave notice of her intent to seek return of the two younger children by separate motion. *Id.* Ms. Culp recommended the motion be denied based on the family's history, James' failure to engage in any of the ordered services, and concerns that James was coaching the children's unsafe behaviors. Social Worker

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR
SUMMARY JUDGMENT

Decl., ECF No. 278-19.  In addition to reviewing case notes and the pleadings, the court was also provided with a report from Dr. Solchany, who opined that it would be detrimental to the children's psychological health to return them home and that the children would benefit from medication. Order Denying Return, ECF No. 247-17. The court expressed concern that domestic violence continued in the home and impacted the children, the parents were unwilling to follow court orders, Shaylee had not remedied the deficiencies that had caused the removal of the children, and the risk that the family would flee. *Id.* Shaylee's motion was denied, and a motion for appointment of counsel for the children was also denied. *Id.*

On February 29, 2020, the Governor proclaimed a State of Emergency for all counties in the State as a result of the COVID-19 outbreak. Proclamation, ECF No. 286-6.  This resulted in a suspension of in-person visitation requirements for children in DCYF custody as well as the temporary shutdown of many providers of remedial services. *Id.* The fact-finding trial on the dependency petitions that had been set for March 2, 2020, had to be postponed. Hunter Dep. Ex. 18, ECF No. 272-1. The dependency trial ultimately proceeded in September and October 2020, conducted by Zoom due to the COVID-19 pandemic, and on October 22, 2020, the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing Dependency, ECF No. 250-19. The Court found that the State had "failed to prove that the Medicraft children are dependent pursuant to RCW 13.34.030(6)(c)." *Id.* at 2. The children were reunited with their parents ten months after having been removed, and they were taken to their new home in South Carolina. Kliman Rpt. 2, ECF No. 276-2. The Medicrafts claim that the children developed serious behavioral issues and signs of trauma because of their removal and abuse suffered while in the State's custody. *Id.* at 2-3.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 8

The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021. Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September 2021. ECF No. 1.[5] The operative complaint is Plaintiffs' Second Amended Complaint, ECF No. 55, which was filed on March 7, 2022. Plaintiffs assert 23 causes of action against 11 Defendants, including DCYF, Phoenix Protective Corporation, and 9 individuals. Relevant to the pending motion, the Medicrafts assert the Eleventh Cause of Action—Negligence and Deprivation of Rights Under 42 U.S.C. § 1983 and *Braam*[6]—against Defendant Tanessa Sanchez. Sec. Am. Compl. ¶¶ 231-42, ECF No. 55. Plaintiffs also assert the Twenty-third Cause of Action—Conspiracy by Defendants Leuzzi, Sterbick, and Sanchez—against Ms. Sanchez. *Id.* ¶¶ 290-93. Ms. Sanchez moves for summary judgment on both causes of action. Def.'s Mot, ECF No. 251.

## III.    LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out

---

[5] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.

[6] Referring to *Braam v. State of Washington*, 150 Wn.2d 689 (2003).

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## IV.    DISCUSSION

Plaintiffs' Eleventh Cause of Action alleges negligence and deprivation of rights under 42 U.S.C. § 1983.[7] Sec. Am. Compl. ¶¶ 231-42, ECF No. 55. The Court interprets these as two separate claims and shall address them as such. They also allege conspiracy under the Twenty-Third Cause of Action. *Id.* ¶¶ 290-93.

### A. Negligent Investigation

Plaintiffs allege that Ms. Sanchez "had a duty to the children to engage in a meaningful investigation related to their dependency proceedings and failed to do so, including, without limitation refusing to meet with Mr. Medicraft." Sec. Am. Compl. ¶ 240, ECF No. 55. Ms. Sanchez moves for summary judgment on this claim, contending that there is no such cause of action as it relates to individual state employees. Def.'s Mot. 17-18, ECF No. 251. She also provides evidence that she made efforts to meet with James Medicraft, including telephone conversations with him. *Id.* at 19.

The Washington Supreme Court has clearly stated that there is no negligent investigation cause of action under the common law, but such a cause of action may be implied from the statutory provision. *Ducote v. State, Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 702 (2009); *see also Desmet v. State*, 200 Wn.2d 145, 160 (2022) (en banc) ("This negligent investigation cause of action

---

[7] Plaintiffs add "and *Braam*" in the title of the cause of action in their complaint, but it only appears in the title, and is not mentioned in the Plaintiffs' brief in response to the summary judgment motion. Therefore, the Court likewise drops the wording in its discussion of this cause of action.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

is an exception to the general rule that there is no tort claim for negligent investigation."). RCW 26.44.050 creates a private right of action based on DCYF's statutory duty to investigate child abuse. *Id.* RCW 26.44.050 provides, in relevant part, that

> upon the receipt of a report alleging that abuse or neglect has occurred, the law enforcement agency or the department must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.

It is well-settled that the Department has an implied duty of care under RCW 26.44.050 when investigating allegations of child abuse. *Tyner v. Dep't of Soc. & Health Servs., Child Protective Servs.*, 141 Wn.2d 68, 82 (2000). However, the negligent investigation claim "is a narrow exception that is based on, and limited to, the statutory duty." *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 601 (2003). *Id.* "Because the cause of action of negligent investigation originates from the statute, it is necessarily limited to remedying the injuries the statute was meant to address," which is, specifically, the "unnecessary violation of the integrity of the family and abuse of children within the family." *Id.* at 598. Under the statute, DCYF may be liable for negligent investigation when it "gather[s] incomplete or biased information that results in a harmful placement decision, such as removing a child from a nonabusive home, placing a child in an abusive home, or letting a child remain in an abusive home." *Desmet v. State*, 200 Wn.2d 145, 160, 514 P.3d 1217, 1225 (2022) (en banc) (quoting *M.W.*, 149 Wn.2d at 602).

Ms. Sanchez contends that the obligation to investigate falls on the DCYF state agency as a whole, but asserts that there are no cases to suggest that the duty falls on a specific individual state employee. Def.'s Mot. 18, ECF No. 251 (citing *Pettis v. State*, 98 Wn. App. 553, 559 (1999)). As Plaintiffs point out, *Pettis* does not support Ms. Sanchez's conclusion, but discusses who has

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 11

standing to bring a negligent investigation claim against the State. Pls.' Resp. 7-8, ECF No. 263; *see* 98 Wn. App. at 560 (holding that a childcare provider may not sue for negligent investigation). Courts have also found other exclusions, but there is no doubt that parents and children, such as the Medicrafts, are within the class of persons who may sue for negligent investigation. *See Ducote v. State*, 167 Wn.2d 697, 706 (2009) (excluding stepparents from the categories of persons to whom the State owes a duty under the statute); *Roberson v. Perez*, 156 Wn.2d 33, 45 (2005) ("[T]he statute provides a cause of action for both parents and their children.").

In *Roberson*, the Washington Supreme Court noted that prior to the decisions in 2000 in *Tyner* and *Rodriguez*, negligent investigation claims appeared to have been asserted solely against the state agency and not law enforcement. 156 Wn2d at 38 n.4 (citing cases). In *Rodriguez*, the Washington Court of Appeals reversed the dismissal of the negligent investigation claim, recognizing that "RCW 26.44.050 requires a law enforcement agency or DSHS to investigate possible occurrences of child abuse or neglect." 99 Wn. App. 439, 444 (2000).[8] The *Rodriguez* court clarified the inclusion of law enforcement:

> The rationale in permitting negligent investigation claims against DSHS is based on DSHS's statutory duty to investigate child abuse and the protected status of the parents and children bringing the claims. Those considerations apply equally to claims against law enforcement officers when those officers are conducting investigations pursuant to the statutory directives set forth in RCW 26.44.

---

[8] As of July 1, 2018, the Department of Social and Health Services ("DSHS") duties related to child welfare services have been renamed the Department of Children, Youth, and Families ("DCYF"). RCW 43.216.906. "'Law enforcement agency' means the police department, the prosecuting attorney, the state patrol, the director of public safety, or the office of the sheriff." RCW § 26.44.020.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

99 Wn. App. at 445.  The court also observed that since the law enforcement officer and the CPS investigator worked as a team, "it would be incongruous to hold each co-investigator to a different standard of conduct." *Id.* at 446. Negligent investigation claims have subsequently been brought against individual police officers. *See, e.g.*, *Cheesman v. Margheim*, 1:18-CV-03017-SAB, 2020 WL 13699438, at *6 (E.D. Wash. Mar. 2, 2020*), aff'd sub nom. Cheesman v. City of Ellensburg*, 840 F. App'x 313 (9th Cir. 2021) (granting summary judgment to an officer on the negligent investigation claim against her because she acted reasonably in her investigation and was entitled to immunity); *Thomas v. Cannon*, 3:15-05346 BJR, 2017 WL 2289081, at *14 (W.D. Wash. May 25, 2017) (denying summary judgment on the negligent investigation claim against defendant police officers).

Further, the Court notes that in *Miles v. State, Child Prot. Servs. Dep't*, 102 Wn. App. 142, 154 (2000), the court found no viable claim against the state social worker for negligent investigation because there was no harmful placement but did not determine that the state social worker could not be sued. And in *Petcu v. State*, 121 Wn. App. 36, 56 (2004), the court determined that "[i]n a lawsuit based on negligent investigation, a caseworker may be legally responsible for a parent's separation from a child, even when the separation is imposed by court order." (citing *Tyner*, 141 Wn2d at 86); *see also Gausvik v. Abbey*, 126 Wn. App. 868 (2005) (finding a father's action against the Department and social workers for negligent investigation was time-barred). When the legislature limited the scope of the negligent investigation cause of action by granting DCYF immunity for *emergent* placement investigations and decisions, it provided:

> Governmental entities, *and their officers, agents, employees, and volunteers*, are not liable in tort for any of their acts or omissions in emergent placement investigations of child abuse or neglect under chapter 26.44 RCW including, but not limited to, any determination

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

to leave a child with a parent, custodian, or guardian, or to return a child to a parent, custodian, or guardian, unless the act or omission constitutes gross negligence. Emergent placement investigations are those conducted prior to a shelter care hearing under RCW 13.34.065.

RCW 4.24.595(1) (emphasis added). Although assertions of the negligent investigation claim are typically brought only against DCYF, the Court concludes that there is nothing to prevent plaintiffs from also asserting the claim against the social worker who performed the investigation.

The "investigation" refers to the State's investigation that leads to a harmful placement decision. *Roberson v. Perez*, 156 Wn.2d 33, 46 (2005) ("Our interpretation of the statute in *M.W.* unequivocally requires that the negligent investigation to be actionable must lead to a "harmful placement decision."). Thus, as this Court has already held, Plaintiffs may have a viable claim against DCYF for negligent investigation. *See* Order 13, ECF No. 210 (finding a genuine dispute of fact as to Plaintiffs' negligent investigation claim against DCYF). Plaintiffs also allege that Ms. Sanchez can be held liable under this statute for negligently investigating the allegations of child abuse by failing to conduct domestic violence screening, which is an important part of a social worker's investigations, and for refusing to meet with James Medicraft during her investigation. Pls.' Resp. 8, ECF No. 263. They allege that Ms. Sanchez did not engage in a meaningful investigation, and her negligent investigation resulted in a "harmful placement decision," which was removing the children from a nonabusive home. *Id.* at 8-9.

"Once a duty is established, whether the defendant breached the duty and whether that breach was a proximate cause of the plaintiff's injuries are normally questions of fact." *Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 76 (1997); *see also Tyner*, 141 Wn.2d at 82 (indicating that questions of causation are normally left to the jury). As mentioned above, the Court

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 14

has already found genuine disputes of fact regarding the investigation at issue here. As it relates to Ms. Sanchez specifically, she declares that she made efforts to meet with James, she conducted the Department's domestic violence screening process, and she was no longer the assigned investigator when the decision was made to remove the children. Def.'s Mot. 19, ECF No. 251; Reply, 11-13, ECF No. 268. Under the circumstances, the Court determines that the reasonability of her investigation is more properly before the jury.

Accordingly, Ms. Sanchez's motion will be denied with regard to Plaintiffs' claim of negligent investigation.

**B. Deprivation of Rights Under 42 U.S.C. § 1983**

Plaintiffs contend that Ms. Sanchez may be held liable under 42 U.S.C. § 1983 for contributing to judicial deception in obtaining a court order for removing the children from their home. Pls.' Resp. 6-7, ECF No. 263.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute provides that "[e]very person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Courts have observed that § 1983 is not itself the source of substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

Here, Plaintiffs allege that they were deprived of their rights under the Due Process Clause of the Fourteenth Amendment. Pls.' Resp. 6, ECF No. 263. The Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1. Procedural due process claims typically arise when a child is removed from a parent's care, because "[t]he Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)). Removal must be supported by "reasonable cause to believe that the child is in imminent danger of serious bodily injury." *Id.* (quoting *Mabe*, 237 F.3d at 1106). Even if the removal is pursuant to a court order, as here, the right may be violated if court order was obtained through judicial deception, that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial deception." *David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022). "A misrepresentation or omission is material if a court would have declined to issue the order had [the defendant] been truthful." *Id.* "The court determines the materiality of alleged false statements or omissions." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002)).

Ms. Sanchez argues that Plaintiffs have not made the required substantial showing of deliberate falsehood or reckless disregard for the truth, nor that any misrepresentation or omission was material. Def.'s Mot. 10-11, ECF No. 251. Plaintiffs assert that Ms. Sanchez was assigned by DCYF to investigate allegations of abuse and neglect against Shaylee starting in March 2019. Pls.' Resp. 4, ECF No. 263. On December 6, 2019, Ms. Sanchez signed a declaration, which had been

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

prepared by AAG Leuzzi, for the motion in State Juvenile Court to remove the Medicraft children. *Id.* Plaintiffs assert the following statements were misleading:

> Ms. Sanchez's statements that she had "completed four separate investigations" of the family, that Ms. Sanchez had gathered unspecified "evidence to support that mother was intentionally violating the no contact order between herself and Mr. Medicraft," which "showed a serious disregard for the safety of herself and her children," and that Shaylee Medicraft "admitted to pulling the children's hair as discipline."

*Id.* (citing Sanchez Declaration, ECF No. 252-8, at 2:5, 2:25, 3:25-4:1, 5:11-12). They argue that these statements were misleading because three of her four investigations resulted in a Departmental finding that the concerns were "unfounded," the no-contact order obliged James, not Shaylee, and did not indicate that James was a threat since it had been a "consent" order, and Shaylee had denied pulling the children's hair. *Id.*

Plaintiffs argue that the misleading statements were material as evidenced by their "mirrored" inclusion in the Juvenile Court's December 9, 2019 order of removal. *Id.* at 5, 7 (citing Order Placing Children in Shelter Care ¶¶ 2.4, 2.6, ECF No. 252-7).  The referenced paragraphs state:

> Reasonable efforts were made by the department to prevent or eliminate the need for removal of the children from his home. For the reasons set forth in the supporting declarations an/or testimony presented to the court:
>
> [X] The risk of imminent harm to the children as assessed by petitioner establishes reasonable cause for the out-of-home placement.
>
> [ ] Specific services offered and provided to the parent(s) have been unable to remedy the unsafe conditions in the home and make it possible for the child to remain or return home.

> [ ] Returning or remaining in the child's home would seriously endanger the child's health, safety and welfare.

Order Placing Children in Shelter Care ¶ 2.4, ECF No. 252-7.

> The Court has concerns about all the information from the school, serious allegations of domestic violence, the father's violation of the Protection Order, and the risk of flight.

*Id.* ¶ 2.6. The Court notes that the Juvenile Court specifically referenced "the father's violation of the Protection Order," which does not "mirror" Ms. Sanchez's statement that the "mother was intentionally violating the no contact order between herself and Mr. Medicraft." The Juvenile Court also stated in its Order:

> The photographs from the Department show bruises and scratches on the children, some of which may be consistent with an older child against a younger child, but the bruises are very concerning. The information shows the parents have moved to seven states.

> Based on the totality of circumstances, [i]t is in the children's best interests to be removed from the parent's care at this time.

*Id.* ¶¶ 2.7-2.8. In addition to Ms. Sanchez's declaration, the Juvenile Court reviewed other documents and declarations submitted by both parties, included the above-referenced photographs of the children, and heard arguments of counsel. *Id.* ¶ 1.3; Fry Decl., ECF No. 252-16. Other evidence provided to the Juvenile Court included support for the motion by the court-appointed Guardian Ad Litem, Virginia Whalen, who testified concerns about James violating the no-contact order, the children's behaviors, bruises and marks, their mental health and well-being, Shaylee's ability to keep the children safe, and the risk of flight. Whalen Dep. 72-73, ECF No. 252-17; ECF No. 252-18. The motion to the Juvenile Court also included copies of the New York court orders and hearing transcripts, which included court filings by both Shaylee and James, each alleging serious domestic violence issues. Certification of Emergency Hearing, ECF No. 252-15.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 18

Further, even if the disputed statements were redacted, Ms. Sanchez's declaration included other undisputed information that would have been relevant to the court's findings, such as the referral from New York advising "extreme concern as to the safety of the children;" New York documentation of a no-contact order and violation of the order; Shaylee's dishonesty about her ongoing involvement with James; Shaylee mentioning wanting to take the children to California; the family having lived in a variety of places such as North Dakota, Missouri, Washington, California and New York; concern that Shaylee and James may flee with the children; witnessing concerning elements as to the children's daily appearance; consistently observing the children to have a variety of bruises; Shaylee's increased resistance to intervention; and personally seeing Shaylee and the children with an older man in a Walmart store in November 2019 and later identifying the older man as James, despite the no-contact order. Sanchez Decl., ECF No. 252-8.

In response to Ms. Sanchez's evidence, Plaintiffs assert that Ms. Sanchez's argument that her misstatements were immaterial is implausible. Pls.' Resp. 7, ECF No. 263. But plausibility is not the standard at this stage of the litigation. The Plaintiffs must establish that, but for the misstatements, the Juvenile Court's Order would not have issued. Plaintiffs have not met their burden to survive summary judgment on this ground. The Court finds that Ms. Sanchez's misstatements were not material to the Juvenile Court's findings. Accordingly, her motion for summary judgment on the § 1983 claim will be granted.

### C. Conspiracy

Ms. Sanchez also moves for summary judgment on the conspiracy cause of action alleged against her on the basis that Plaintiffs are unable to establish the required elements to establish a civil conspiracy.  Def.'s Mot. 20, ECF No. 251.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

- 19

To establish a civil conspiracy, the plaintiff "must prove by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wash. App. 332, 350-51 (Wn. Sup. Ct. 1996). The alleged coconspirators "must have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Curow-Ray v. City of Tumwater*, No. 09-cv-5633, 2010 WL 3222505, at *13 (W.D. Wash. Aug. 12, 2010). Further, "[b]ecause the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently – its viability hinges on the existence of a cognizable and separate underlying claim." *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020).

Plaintiffs argue that they "intend to prove" that Ms. Sanchez conspired with AAG Leuzzi and Ms. Sterbick to mislead the Juvenile Court.  Pls.' Resp. 9, ECF No. 263.  They argue that in a federal civil rights case, a conspiracy does not require an express agreement but may be inferred from conduct. *Id.* (quoting *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998)).[9] Although AAG Leuzzi has been dismissed from this case, Plaintiffs argue that Ms. Sanchez may still be found to have conspired with him and Ms. Sterbick. *Id.*  However, at this stage of the litigation, Plaintiffs must do more than "intend to prove" that Ms. Sanchez entered into an agreement to "fabricate false information to take the Medicraft Children into State custody," or to remove James Medicraft's visitation rights.  Sec. Am. Compl. ¶¶ 291-92, ECF No. 55.

---

[9] The claim in *Scott* was under 42 U.S.C. § 1985, which requires that the plaintiff be a member of a protected class and the events giving rise to the conspiracy claim were motivated by animus toward that class. 140 F.3d at 1284; *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  Plaintiffs have not alleged a similar cause of action.

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

Ms. Sanchez provided evidence that shows she attended only part of the December 5, 2019 meeting to answer some questions about her earlier investigation and the timeline of events. *See* Dependency Trial Tr., Sanchez 6-7, ECF No. 252-14; Sterbick Decl. 67-68, ECF No. 256-2.  Ms. Sanchez was no longer the assigned investigator in the Medicraft case when the decision was made to remove the children, and neither she nor Ms. Sterbick participated in making the decision. Sanchez Dep. 112-14, ECF No. 252-3; Sterbick Dep. 69-72, ECF No. 252-2; Dependency Trial Tr., Sanchez 14-15, ECF No. 252-14. Plaintiffs direct the Court to no evidence in response, and thus show no genuine issue for trial. "On summary judgment, 'it is not our task . . . to scour the record in search of a genuine issue of triable fact.'" *Californians for Renewable Energy v. California Pub. Utils. Comm'n*, 922 F.3d 929, 935–36 (9th Cir. 2019) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

Accordingly, the Court will grant Ms. Sanchez's motion on the conspiracy claim.

## V.      CONCLUSION

For the foregoing reasons, Defendant Tanessa Sanchez's Motion for Summary Judgment, ECF No. 251, is GRANTED IN PART and DENIED IN PART.  The motion is granted with regard to the claim of Deprivation of Rights Under 42 U.S.C. § 1983, and the claim of conspiracy. The motion is denied with regard to the negligent investigation claim, which will proceed to trial on April 8, 2024.

DATED this 4th day of March, 2024.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING IN PART AND DENYING IN PART TANESSA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT