The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.*,

     Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

     Defendants.

NO. 21-cv-1263

**ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Ross Hunter is the DCYF Secretary, and his Motion for Summary Judgment, ECF

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

- 1

No. 246, is currently pending before the Court.[2] Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant Mr. Hunter's motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

The circumstances of this case required the Court to review an extensive factual and procedural background with multiple parties. The parties are familiar with the factual and legal background of this dispute, and the Court's prior orders have provided additional background in varying contexts, so only a summary of facts relevant to this motion are provided.

The Washington State's Department of Children, Youth, and Families ("DCYF") is responsible for delivering family and children's services to preserve families when appropriate and ensure children's health and safety. Ombuds 2019 Rpt. 5, ECF 278-4. Its mission is that "[a]ll Washington's children and youth grow up safe and healthy–thriving physically, emotionally, and educationally, nurtured by family and community." Job Bulletin 1, ECF No. 267-23. The organizational structure is somewhat complicated. At the top of the agency's organizational structure is Ross Hunter, who serves as the DCYF Secretary reporting directly to the Governor. Hunter Dep. 6-7, ECF No. 272-1. At the time of the events at issue, a Deputy Secretary reported to Mr. Hunter, and the Assistant Secretary reported to the Deputy Secretary. *Id.* at 34. The Assistant Secretary, Kwesi Booker, ran the Department's Child Welfare Field Operations. *Id.* at 7, 12. The State is divided into regions that are run by Regional Administrators who reported to Mr. Booker.

---

[2] In total, Defendants filed seven motions—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259.  The other motions either have been or will be addressed by separate orders.
[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders.

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

1    *Id.* King County is Region 4, which is further divided into six field offices, each overseen by Area

2    Administrators, who report to the Deputy Regional Administrator. *Id.*; Applebee Dep. 9, ECF No.

3    250-1. King County also has three Regional Area (or Program) Administrators who provide support

4    to all of King County for the after-hours program, adoption program, and the placement desk.

5    Applebee Dep. 9-10.  About 2,000 children were in Region 4 care during the time of the events at

6    issue in this case.  *Id.* at 10. In the State, there are nearly 6,500 children in DCYF's care at any

7    given time. Hunter Dep. 54, ECF No. 272-1.

8         If the court orders the removal of a child from the parents, DCYF becomes the guardian,

9    and its role is to ensure that the child is in a safe placement that is meeting all of their needs. Whalen

10   Dep. 61, ECF No. 254-12. The regional placement desk is responsible for placements of children

11   who have been removed from their home. Sterbick Dep. 48-49, ECF No. 254-9. The staff works to

12   find appropriate foster homes, which become licensed for a certain number of children. *Id.* at 45.

13   Multiple factors play a role in finding a placement, including keeping the child connected to their

14   family and community, the age and special needs of a child, the number of children the home is

15   licensed to take in, whether day-care is required, and so on. *Id.* If a child cannot be placed by late

16   afternoon, an after-hours request is submitted to the regional after-hours program to ensure there

17   will be after-hours supervision, and a hotel organized that will accommodate out-of-placement

18   children. *Id.* at 33. The goal is to place siblings together, but that is not always possible. Sterbick

19   Dep. 125, ECF No. 260-4. Children with complex needs, whether mental health issues, or

20   aggressive or destructive behaviors, may be eligible for a placement with a Behavioral

21   Rehabilitation Services ("BRS") provider, who is highly skilled with behavioral issues, but these

22   providers are not always in the State. Applebee Dep. 142-43, ECF No. 260-19.

23

24   ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

25    - 3

1    The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and

2    NM—became involved with Washington State Child Protective Services ("CPS") in February

3    2019. Culp Decl. 3, ECF No. 278-19. Intake 4091427 was screened on February 25, 2019, in which

4    the referent alleged neglect of the children, advised that the family had been living in New York

5    and was now living somewhere in the Seattle area, and relayed that there was an active no-contact

6    order as well as an arrest warrant for James for violation of the no-contact order. CPS Assess. ID

7    72915070, ECF No. 270-5. A dependency petition was filed on April 25, 2019, and the children

8    were temporarily removed from Shaylee's care by court order. Shelter Care Hearing Order, ECF

9    No. 247-5. After an initial shelter care hearing on April 30, 2019, the children were returned to

10   Shaylee's care with conditions, including the requirement for James to abide by the no-contact

11   order. *Id.*

12   During the following months, as the dependency petition was being reviewed, multiple CPS

13   intakes were received and investigated related to neglect, inappropriate discipline, and violations

14   of the no-contact order. Sterbick Decl. 9, ECF No. 256-8; Sanchez State Court Decl. 2, ECF No.

15   252-8; *see also, e.g.*, Case Note 46407681, ECF No 252-9; Case Note 46136936, ECF No. 252-10;

16   Case Note 46427965, ECF No. 252-11. Following a staffing and planning meeting on December 5,

17   2019, a decision was made to again remove the children from Shaylee's care, and an emergency

18   hearing was held on December 9, 2019, during which the King County Superior Court, Juvenile

19   Department, issued an Order Placing Children in Shelter Care. Order, ECF No. 247-6. The children

20   ranged in age from 1 to 9 years old when removed.  Kliman Rpt. 1, ECF No. 276-2.

21   The children did not all get the benefit of stable placements, and especially the three older

22   boys did not respond well to removal from their mother's care. Mother's Emergency Motion for

23   Return Home, ECF No. 286-1.  In January 2020, social worker Elizabeth Culp was assigned to the

24   ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

25   - 4

1    Medicraft children's case. Culp Dep. 9, ECF No. 254-6. There are multiple reports of JM, AM, and

2    EM assaulting staff members, including hitting, punching, kicking, spitting, biting, and destroying

3    property as well as trying to run away. Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59,

4    ECF No. 247-7. The police were called to the Kent office on multiple occasions, more than one

5    staff member required medical attention, and one after-hours worker suffered permanent damage

6    to her retina when AM hit her in the face from behind while in the car. Social Worker Decl. 2, ECF

7    No. 278-19. On the other hand, NM and MM, aged 1 and 4, were able to stabilize in foster homes

8    fairly quickly. Culp Dep. 184-87, 190, ECF No. 260-5; Whalen Dep. 114-15, ECF No. 260-6.

9          In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM.

10   Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys

11   were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children

12   being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included

13   photographs of the children with bruises received during DCYF care. *Id.* She noted that when she

14   is with the boys, their behavior improved, and then escalated again after she left, and DCYF "is

15   unable to provide safe and appropriate care for these children." *Id.* Shaylee also gave notice of her

16   intent to seek return of the two younger children by separate motion. *Id.* Ms. Culp recommended

17   the motion be denied based on the family's history, James' failure to engage in any of the ordered

18   services, and concerns that James was coaching the children's unsafe behaviors. Social Worker

19   Decl., ECF No. 278-19.  In addition to reviewing case notes and the pleadings, the court was also

20   provided with a report from Dr. Solchany, who opined that it would be detrimental to the children's

21   psychological health to return them home and that the children would benefit from medication.

22   Order Denying Return, ECF No. 247-17. Shaylee's motion was denied, and the motion for

23   appointment of counsel for the children was also denied. *Id.*

24   ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

25    - 5

On February 29, 2020, the Governor proclaimed a State of Emergency for all counties in the State as a result of the COVID-19 outbreak. Proclamation, ECF No. 286-6.  This resulted in a suspension of in-person visitation requirements for children in DCYF custody as well as the temporary shutdown of many providers of remedial services. *Id.* The fact-finding trial on the dependency petitions that had been set for March 2, 2020, had to be postponed. Hunter Dep. Ex. 18, ECF No. 272-1. In an effort to find a more stable placement for JM and AM, Assistant Secretary, Kwesi Booker, waived the requirement for finding the children dependent before allowing an out-of-state placement with BRS. *Id.* at 2. At the time, no available in-state BRS program would accept the boys because their behavior was too severe, and DCYF moved for an emergency hearing to request out-of-state placement, but the hearing was denied by the court. Order, ECF No. 247-19; Social Worker Decl., ECF No. 247-7 at 45-50. In-state BRS placements were eventually arranged. Culp Dep. 63-64, ECF No. 260-5.

The dependency trial ultimately proceeded in September and October 2020, conducted by Zoom due to the COVID-19 pandemic, and on October 22, 2020, the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing Dependency, ECF No. 250-19. The Court found that the State had "failed to prove that the Medicraft children are dependent pursuant to RCW 13.34.030(6)(c)." *Id.* at 2. The children were reunited with their parents ten months after having been removed, and they were taken to their new home in South Carolina. Kliman Rpt. 2, ECF No. 276-2. The Medicrafts claim that the children developed serious behavioral issues and signs of trauma because of their removal and abuse suffered while in the State's custody. *Id.* at 2-3.

The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021. Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

2021. ECF No. 1.[4] The operative complaint is Plaintiffs' Second Amended Complaint, ECF No. 55, which was filed on March 7, 2022.  Plaintiffs assert 23 causes of action against 11 Defendants, including DCYF, Phoenix Protective Corporation, and 9 individuals. Relevant to the pending motion, the Medicrafts assert the Ninth Cause of Action—Negligence and Deprivation of Right Under 42 U.S.C. § 1983 and *Braam*[5]—against Defendant Ross Hunter. Sec. Am. Compl. ¶¶ 212-19, ECF No. 55.  Mr. Hunter moves for summary judgment on this cause of action.

### III.    LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

---

[4] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.

[5] Referring to *Braam v. State of Washington*, 150 Wn.2d 689 (2003).

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

- 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## IV.    DISCUSSION

Under Plaintiffs' Ninth Cause of Action, they allege negligence and deprivation of rights under 42 U.S.C. § 1983 and *Braam*. Sec. Am. Compl. ¶¶ 212-19, ECF No. 55.  The Court interprets these as two separate claims and shall review them as such.

### A.  Negligent Investigation

Plaintiffs allege that Mr. Hunter had a duty to JM, AM, and EM, to investigate allegations of harm and risk of harm, and that he failed to investigate or unreasonably delayed investigating. *Id.* ¶¶ 214-15; *see also* Pls.' Resp. 6-7 ("Secretary Hunter is liable under State law for negligent investigation of the Department's abuse and neglect."). Mr. Hunter denies that he owed any specific investigation duty to the Plaintiffs, and therefore moves for summary judgment on this claim. Def.'s Mot. 11-13, ECF No. 246; Reply 1, 10-12, ECF No. 271.

Plaintiffs reference RCW 26.44.050, which provides, in relevant part, that

> upon the receipt of a report alleging that abuse or neglect [of a child] has occurred, the law enforcement agency or the department must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.

It is well-settled that DCYF has an implied duty to investigate child abuse under RCW 26.44.050. *Tyner v. Dep't of Soc. & Health Servs., Child Prot. Servs.*, 141 Wn.2d 68, 82 (2000). However, Washington courts do not recognize a general cause of action for negligent investigation. *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 601 (2003). Rather, the negligent investigation claim "is a narrow exception that is based on, and limited to, the statutory duty." *Id.* "Because the cause of action of negligent investigation originates from the statute, it is necessarily limited to remedying the injuries the statute was meant to address," which is, specifically, the "unnecessary violation of the integrity of the family and abuse of children within the family." *Id.*

at 598. Under the statute, DCYF may be liable for negligent investigation when it "gather[s] incomplete or biased information that results in a harmful placement decision, such as removing a child from a nonabusive home, placing a child in an abusive home, or letting a child remain in an abusive home." *Desmet v. State*, 200 Wn.2d 145, 160 (2022) (en banc) (quoting *M.W.*, 149 Wn.2d at 602).

The statutory duty to investigate is triggered by the State's receipt of a report alleging abuse or neglect of a child. RCW § 26.44.050; *see Wrigley v. State*, 195 Wn.2d 65, 71 (2020) ("The duty to investigate cannot be invoked until receipt of a report."). Mr. Hunter asserts that he received no such report. Def.'s Mot. 11-12, ECF No. 246. The key issue here, however, is that the "investigation" to which the statute refers is the State's investigation that resulted in the removal of the Medicraft children from their home. *See Roberson v. Perez*, 156 Wn.2d 33, 46 (2005) ("Our interpretation of the statute in *M.W.* unequivocally requires that the negligent investigation to be actionable must lead to a "harmful placement decision."). The Court has already held that Plaintiffs may have a viable claim against DCYF for negligent investigation that resulted in removing the Medicraft children from their home. *See* Order 13, ECF No. 210 (finding a genuine dispute of fact as to Plaintiffs' negligent investigation claim against DCYF). But the Plaintiffs are not alleging that Mr. Hunter, individually, is liable for negligently investigating the claims of abuse and neglect that led to the children's removal.

Rather, Plaintiffs allege that Mr. Hunter may be held liable under this statute for failing to "timely investigate after his secretary Kwesi Booker witnessed six social workers, Mr. Booker, Kent PD, and Mr. King, failure to control JM, AM, and EM, including the children physically leaving the Department Office without supervision." Pls.' Resp. 6, ECF No. 261; Sec. Am. Compl. ¶ 215, ECF No. 55. In other words, Plaintiffs allege that Mr. Hunter failed to investigate his

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

employees' failures to control the Medicraft children after they were removed from their home and were in DCYF's care. As such, Plaintiffs' allegations do not fit within the narrow exception that arises from the statutory duty under RCW 26.44.050. Plaintiffs' allegations do not reference an investigation that resulted in a "harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive home." *Desmet*, 200 Wn.2d at 160. The negligent investigation cause of action is designed to be a narrow exception to the rule that there is no general tort claim for negligent investigation, and the "harmful placement decision" requirement is interpreted narrowly. *McCarthy v. Cnty. of Clark*, 193 Wn. App. 314, 333 (2016).

Accordingly, Mr. Hunter's motion will be granted with regard to Plaintiffs' claims of negligent investigation.

**B.  Deprivation of Rights Under 42 U.S.C. § 1983 and *Braam***

Plaintiffs allege that JM, AM, and EM each had fundamental liberty interests and substantive due process rights to be free from unreasonable risk of harm, and Mr. Hunter knew of his subordinates' violations and failed to act to prevent them. Sec. Am. Compl. ¶¶ 215-16, ECF No. 55; Pls.' Resp. 8-9, ECF No. 261. Plaintiffs contend that Mr. Hunter may be held liable under 42 U.S.C. § 1983 and *Braam* for negligent supervision. Pls.' Resp. 7-9, ECF No. 261.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute provides that "[e]very person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Courts have observed that § 1983 is not itself the source of

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

- 10

substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*

Here, Plaintiffs allegations are not a model of clarity, but their reference to "fundamental liberty interests and substantive due process rights," Sec. Am. Compl. ¶ 213, appears to be rooted in the Fourteenth Amendment's Due Process Clause. The Due Process Clause provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs also reference *Braam* in conjunction with § 1983. In *Braam*, the Washington Supreme Court recognized that "foster children have a constitutional substantive due process right to be free from unreasonable risks of harm and a right to reasonable safety. To be reasonably safe, the State, as custodian and caretaker of foster children must provide conditions free of unreasonable risk of danger, harm, or pain, and must include adequate services to meet the basic needs of the child." 150 Wn.2d at 700. *See also* RCW § 13.34.020 (declaring that the "right of a child to basic nurturing includes the right to a safe, stable, and permanent home.").

A plaintiff must also establish that the alleged violation was caused by the conduct of a person acting under the color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Here, the parties dispute whether Mr. Hunter can be held liable as a person who caused the constitutional violation based on supervisory liability. Def.'s Mot. 7-8, ECF No. 246; Pls.' Resp. 7-9, ECF No. 261.  Mr. Hunter contends that he cannot be held liable for any alleged constitutional violation because he did not commit any affirmative act, and lacked knowledge of Plaintiffs' situation. Plaintiffs argue that Mr. Hunter's negligent inaction while a supervisor supports their claim against him, alleging that he was liable in his supervisory capacity. *Id.*

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) ("Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them."). In other words, "personal participation" is not strictly required for § 1983 liability; "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Murguia v. Langdon*, 61 F.4th 1096, 1107 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553 (2024) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

The Supreme Court has ruled that merely negligent actions or omissions by state officials do not "deprive" a person of life, liberty, or property within the meaning of the Fourteenth Amendment, and thus are not actionable under § 1983. *Daniels v. Wil*liams, 474 U.S. 327, 328, 332 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Similarly, under *Braam*, more than negligence is required. 150 Wn.2d at 700. Further, "the mere failure to perform a legally required

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

- 12

1   act is [not] grounds for § 1983 liability based on a substantive due process violation." *Murguia*,

2   61 F.4th at 1108.

3        Here, Plaintiffs' allegation of negligent supervision is insufficient to establish a

4   constitutional deprivation. Plaintiffs fail to set forth facts that would create a genuine issue for trial

5   in response to Mr. Hunter's motion. The record shows that Kwesi Booker was the individual

6   responsible for running child welfare field operations, and he reported to a deputy secretary rather

7   than to Mr. Hunter. Hunter Dep. 34, ECF No. 247-1; Hunter Dep. 6-7, 50, 56 ECF No. 272-1. Mr.

8   Hunter asserts that he is not a trained social worker, does not know the specifics of how decisions

9   are made on a case-by-case basis, or have details about the specifics of any particular case.  Hunter

10  Dep. 50, 57, 65, ECF No. 272-1. Rather, he reviews summaries of high-level statistics. *Id.* at 54.

11  He states that he had discussions about the Medicraft family as a challenging case, but he is

12  unaware of any specific instruction that he ever sent out about the case, nor have the Medicrafts

13  pointed to any specific instruction. *Id.* at 18; Hunter Decl. 1-2, ECF No. 248. Further, the

14  Medicrafts agree that he has never spoken with them. James Dep. 154, ECF No. 247-1; Shaylee

15  Dep. 128, ECF No. 247-3.

16       Although Plaintiffs state that there is "ample undisputed evidence" that Mr. Hunter knew

17  of DCYF's violations against the Medicrafts and his inaction, the Plaintiffs do not identify this

18  evidence to the Court. *See* Pls.' Resp. 8, ECF No. 261. Plaintiffs note that Mr. Hunter concedes

19  that he was aware of and did discuss the Medicraft's case.  *Id.* (citing Defs.' Mot. 3, ECF No. 246).

20  As evidence that Mr. Hunter was aware of the Department's failures to find stable placements for

21  the Medicraft children, the Plaintiffs cite an email from Kwesi Booker to Mr. Hunter that included

22  a list of the top 24 placement exceptions, which included the Medicrafts.  Pls.' Resp. 4, ECF No.

23  261 (citing Ex. C, ECF No. 264-3). The email, however, is dated December 7, 2020, two months

24  ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

25     - 13

after the court had already dismissed the dependency case and reunited the children with their parents. Plaintiffs also cite the December 2019 Ombuds report to the Legislature that refers to the widespread use of "placement exceptions" as a "crisis." Pls.' Resp. 4, ECF No. 261 (citing Ex. D at 8-9, ECF No. 264-4). The report provides an account of complaint investigation activities for the fiscal year, as well as recommendations to improve the quality of state services for children and families. Ombuds 2019 Report 3, ECF No. 264-4. While this report is concerning, and perhaps provides evidence that Mr. Hunter should have been taking actions to improve DCYF services, it does not provide evidence of how Mr. Hunter caused or personally participated in causing the harm to Plaintiffs. If other evidence exists, Plaintiffs have failed to identify it. "On summary judgment, 'it is not our task . . . to scour the record in search of a genuine issue of triable fact.'" *Californians for Renewable Energy v. California Pub. Utils. Comm'n*, 922 F.3d 929, 935–36 (9th Cir. 2019) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

Accordingly, the Court will grant Mr. Hunter's motion regarding § 1983 or *Braam* liability.

## V.      CONCLUSION

For the foregoing reasons, Defendant Ross Hunter's Motion for Summary Judgment, ECF No. 246, is GRANTED.

DATED this 4th day of March, 2024.


Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING ROSS HUNTER'S MOTION FOR SUMMARY JUDGMENT

- 14