The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.*,

    Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

    Defendants.

NO. 21-cv-1263

**ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Defendant Elizabeth Sterbick served as the Child Family Welfare Services supervisor on the Medicraft case in the Kent office until January 2020, and her Motion for Summary

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 1

Judgment, ECF No. 255 is pending before the Court.[2] Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant Ms. Sterbick's motion.[4] The reasoning for the Court's decision follows.

## II.   BACKGROUND

The circumstances of this case required the Court to review an extensive factual and procedural background with multiple parties. The parties are familiar with the factual and legal background of this dispute, and the Court's prior orders have provided additional background in varying contexts, so only a summary of facts relevant to this motion are provided.

The Washington State's Department of Children, Youth, and Families ("DCYF") is responsible for delivering family and children's services to preserve families when appropriate and ensure children's health and safety. Ombuds 2019 Rpt. 5, ECF 278-4. The State is divided into regions that are run by Regional Administrators. Hunter Dep. 7, ECF No. 272-1. King County is Region 4, which is further divided into six field offices, each overseen by Area Administrators, who report to the Deputy Regional Administrator. *Id.*; Applebee Dep. 9, ECF No. 250-1. King County also has three Regional Area (or Program) Administrators who provide support to all of King County for the after-hours program, adoption program, and the placement desk. Applebee Dep. 9-10. About 2,000 children were in Region 4 care during the time of the events at issue in this case. *Id.* at 10. The Kent field office, because it is a very large office with a heavy caseload, is run by two

---

[2] In total, Defendants filed seven motions—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259.  The other motions either have been or will be addressed by separate orders.

[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders.

[4] The Court notes that Ms. Sterbick withdrew her motion as to the Fourteenth Cause of Action (Assault and Battery of Shaylee Medicraft).  Reply 2, 12, ECF No. 12.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 2

Area Administrators—Shae Hopfauf, Kent East, and Cleveland King, Kent South. Hunter Dep. 7; Sterbick Dep. 67, ECF No. 256-2; Sanchez Dep. 22. ECF No. 250-5.

Child Protective Services ("CPS"), also organized by geographic areas, investigates allegations of child abuse and neglect that come in from the community. Sanchez Dep. 10, 21. These allegations are in the form of an "intake" or "referral." Sterbick Dep. 25, ECF No. 252-2. The CPS investigator stays assigned to the case until the completion of the investigation, or until the family moves to a different office area, at which time, the case will transfer to an investigator in the new office. Sanchez Dep. 10. The investigator has face-to-face contact with the child and tries to work with the family to determine if they need services, and the investigator may file a dependency petition before the investigation is completed. *Id.* at 25.

A Child Family Welfare Services ("CFWS") social worker takes over cases once CPS has filed a dependency petition on a child, even while the CPS investigation continues. *Id.* at 11, 25. The social worker's role is to start working with the family, providing services, helping with referrals for services, providing concrete goods, and engaging with them to support reunification if possible, and provide stable out-of-home placements. *Id.*; Culp Dep. 62, ECF No. 254-6. Children may not be removed from their parents without a court order or a protective custody order. Sterbick Dep. 73. If the court orders the removal of a child from the parents, DCYF becomes the guardian and its role is to ensure that the child is in a safe placement that is meeting all of their needs. Whalen Dep. 61, ECF No. 254-12. A Guardian Ad Litem ("GAL") may be appointed by the court to advocate for the best interests of children in these situations. Whalen Dep. 72, ECF No. 252-17.

The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and NM—became involved with Washington State Child Protective Services ("CPS") in February 2019. Culp Decl. 3, ECF No. 278-19. Intake 4091427 was screened on February 25, 2019, in which

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 3

the referent alleged neglect of the children, advised that the family had been living in New York and was now living somewhere in the Seattle area, and relayed that there was an active no-contact order as well as an arrest warrant for James for violation of the no-contact order. CPS Assess. ID 72915070, ECF No. 270-5. The referent indicated concern that Shaylee and the children were forced to relocate and were homeless. *Id.* The intake was initially assigned to one of the Seattle offices, but because the Medicraft family were located in a different geographic service area, the case was transferred to the Kent office and assigned to Tanessa Sanchez to investigate. Sanchez Dep. 21-22, ECF No. 250-5. Ms. Sanchez's investigation led to findings that James was in contact with Shaylee and the children in violation of the no-contact order that had been issued in the New York Family Court, he had not completed the court-ordered services in New York,[5] and Shaylee was not accepting the social worker's services that would help remedy the situation. *Id.* Allegations of neglect were deemed founded, and the case was transferred to Child Family Welfare Services. *Id.*

A dependency petition was filed on April 25, 2019, and the children were temporarily removed from Shaylee's care by court order. Shelter Care Hearing Order, ECF No. 247-5. After an initial shelter care hearing on April 30, 2019, the children were returned to Shaylee's care with conditions that included allowing contact between the children and their New York attorney, cooperation with the New York pending case, a requirement to follow the no-contact order, no visitation granted to James, and the requirement to cooperate with the shelter care's services, including counselling for all the children and Shaylee. *Id.* Shaylee and the children moved into the

---

[5] Conditions included James' mandatory participation and successful completion of a court approved 26-week anger management course as well as a psychiatric evaluation and compliance with aftercare treatment recommendations. NY Court Docs. 36, ECF No. 247-4.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 4

Solid Ground shelter, the school-age children attended school, and Shaylee was referred to and completed two "Homebuilders" in home services. Sterbick Decl. 8-9, ECF No. 256-8; Email, ECF No. 267-20. A CFWS social worker worked with the family to provide services, and Ms. Sanchez continued in her role as CPS investigator until November 2019. Sterbick Dep. 11, 24-25, ECF No. 256-2. In July 2019, shortly after the New York court referred the Medicraft case to Washington State, Virginia Whalen was appointed as Guardian Ad Litem for the children. Whalen Dep. 21, ECF No. 252-17.

Defendant Elizabeth Sterbick served as the CFWS supervisor on the Medicraft case in the Kent office until January 2020, reporting to Area Administrator, Cleveland King. Sterbick Dep. 12, 19, ECF No. 256-15. According to Ms. Sterbick, there were multiple CPS intakes received between February 25, 2019 and September 6, 2019.[6] Sterbick Decl. 9, ECF No. 256-8. These intakes included an incident of Shaylee leaving the children home alone at Solid Ground, which resulted in the staff reporting that they found four-year-old MM tied up with shoelaces to the bed. *Id.* There were also referrals from the boys' YMCA summer camps and the community center related to reports of physical discipline with a belt at home, the boys' bad behavior, neglect and hygiene, JM physically assaulting the staff and other campers, bad language including racial slurs by seven-year-old AM, and violent outbursts. *Id.* at 9-10. *See also* Case Note 46407681, ECF No 252-9; Case Note 46136936, ECF No. 252-10; Case Note 46427965, ECF No. 252-11.

In August 2019, Shaylee called the Attorney General's Office requesting to have the no-contact order between her and James dropped, and the parties agreed to allow James to begin supervised visits with the children. Sterbick Decl. 10, ECF No. 256-8. In September 2019, a referral

---

[6] The Court notes that Ms. Sterbick reported ten intakes, but Ms. Sanchez stated that she completed four separate investigations reported by a variety of referrers during that time. Sanchez State Court Decl. 2, ECF No. 252-8.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 5

was received from the elementary school, suspecting that James was having unauthorized and unsupervised contact with the children and informing DCYF that the children were fearful that CPS would take them away because Shaylee would threaten to call CPS and to withhold visits with their father as forms of punishment. *Id.* In November 2019, Ms. Sanchez reported to her replacement CPS investigator that she had seen a man she suspected was James with the children at a Walmart store. Sanchez Dep. 112-14, ECF No. 252-3; Sanchez State Court Decl. 4-5, ECF No. 252-8. She later identified that it was James that she had seen with the children. *Id.* Shaylee started working for Amazon on the night shift in November 2019, and at some point, Shaylee and the children moved out of the shelter into a one-bedroom motel room. Case Note 46863099, ECF No. 256-7 at 8-9; Email, ECF No. 267-20.

Meanwhile, Assistant Attorney General Leuzzi, on behalf of DCYF, was actively working on the dependency petition. On September 17, 2019, a Subpoena Duces Tecum was issued to the New York Family Law Court clerk requesting certified copies of all petitions and orders related to the Medicraft case in New York. Subpoena, ECF No. 247-4 at 57-59. AAG Leuzzi held a staffing and planning meeting on December 5, 2019 to discuss the Medicraft case. Sterbick Dep. 65, 72, ECF No. 252-2; Email, ECF No. 267-24. Attending the meeting, at a minimum, were AAG Leuzzi, Ms. Sterbick, Area Administrators Cleveland King and Shae Hopfauf, supervisors and a social worker from the Kent South office, and Ms. Sanchez attended part of the meeting. Sterbick Decl. 67-68, ECF No. 256-2; Dependency Trial Tr., Sanchez 6-7, ECF No. 252-14. The next day, a decision was made to remove the children, and AAG Leuzzi filed a notice of an emergency hearing to be held on December 9, 2019, seeking findings and entry of an order permitting DCYF to place the children in Licensed Foster Care. Certification of Emergency Hr'g, ECF No. 252-15. On the same day, Ms. Hopfauf directed Ms. Sterbick to remove the children from Shaylee's care. Sterbick

Dep. 69, ECF No. 252-2. The children ranged in age from 1 to 9 years old when removed. Kliman Rpt. 1, ECF No. 276-2. The hearing was held on December 9, 2019 with James, Shaylee, their attorneys, Ms. Sterbick, Ms. Whalen, AAG Leuzzi, and the CASA attorney in attendance. Order, ECF No. 247-6. The King County Superior Court, Juvenile Department, issued an Order Placing Children in Shelter Care, finding that the circumstances, including James' violation of the Protection Order and flight risk, presented a serious threat of harm to the children. *Id.* The Order included supervised visitation between Shaylee and the children a minimum of three times per week for two hours, and supervised visits between James and the children according to the prior order. *Id.*

The children did not all get the benefit of stable placements, and especially the three older boys did not respond well to removal from their mother's care. Mother's Emergency Motion for Return Home, ECF No. 286-1. In January 2020, social worker Elizabeth Culp in the DCYF Kent office was assigned to the Medicraft children's case. Culp Dep. 9, 45, ECF No. 254-6. There are multiple reports of JM, AM, and EM assaulting staff members, including hitting, punching, kicking, spitting, biting, and destroying property as well as trying to run away. Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59, ECF No. 247-7. The police were called to the Kent office on multiple occasions, more than one staff member required medical attention, and one after-hours worker suffered permanent damage to her retina when AM hit her in the face from behind while in the car. Social Worker Decl. 2, ECF No. 278-19. On the other hand, NM and MM, aged 1 and 4, were able to stabilize in foster homes fairly quickly. Culp Dep. 184-87, 190, ECF No. 260-5; Whalen Dep. 114-15, ECF No. 260-6.

In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM. Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT
- 7

were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included photographs of the children with bruises received during DCYF care. *Id.* She noted that when she is with the boys, their behavior improved, and then escalated again after she left, and DCYF "is unable to provide safe and appropriate care for these children." *Id.* Shaylee also gave notice of her intent to seek return of the two younger children by separate motion. *Id.* Shaylee's motion was denied; the court expressed concern that domestic violence continued in the home and impacted the children, the parents were unwilling to follow court orders, Shaylee had not remedied the deficiencies that had caused the removal of the children, and the risk that the family would flee. Order Denying Return, ECF No. 247-17.

On February 29, 2020, the Governor proclaimed a State of Emergency for all counties in the State as a result of the COVID-19 outbreak. Proclamation, ECF No. 286-6. This resulted in a suspension of in-person visitation requirements for children in DCYF custody as well as the temporary shutdown of many providers of remedial services. *Id.* The fact-finding trial on the dependency petitions that had been set for March 2, 2020, had to be postponed. Hunter Dep. Ex. 18, ECF No. 272-1. The dependency trial ultimately proceeded in September and October 2020, conducted by Zoom due to the COVID-19 pandemic, and on October 22, 2020, the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing Dependency, ECF No. 250-19. The Court found that the State had "failed to prove that the Medicraft children are dependent pursuant to RCW 13.34.030(6)(c)." *Id.* at 2. The children were reunited with their parents ten months after having been removed, and they were taken to their new home in South Carolina. Kliman Rpt. 2, ECF No. 276-2. The Medicrafts claim that the children developed serious behavioral

issues and signs of trauma because of their removal and abuse suffered while in the State's custody. *Id.* at 2-3.

The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021. Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September 2021. ECF No. 1.[7] The operative complaint is Plaintiffs' Second Amended Complaint, ECF No. 55, which was filed on March 7, 2022. Plaintiffs assert 23 causes of action against 11 Defendants, including DCYF, Phoenix Protective Corporation, and 9 individuals. Relevant to the pending motion, the Medicrafts assert the Thirteeenth Cause of Action (Negligence, Deprivation of Rights Under 42 U.S.C. § 1983 and *Braam*[8]), and the Fourteenth Cause of Action (Assault and Battery of Shaylee Medicraft), against Defendant Elizabeth Sterbick. Sec. Am. Compl. ¶¶ 248-62, ECF No. 55. Plaintiffs also assert the Twenty-third Cause of Action—Conspiracy by Defendants Leuzzi, Sterbick, and Sanchez—against Ms. Sterbick. *Id.* ¶¶ 290-93. Ms. Sterbick moved for summary judgment on all three causes of action. Def.'s Mot, ECF No. 255. However, in her Reply, she withdrew her motion as to the Assault and Battery claim. Reply 2, 12, ECF No. 282.

### III.    LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying

---

[7] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.

[8] Referring to *Braam v. State of Washington*, 150 Wn.2d 689 (2003).

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 9

portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## IV. DISCUSSION

Under Plaintiffs' Thirteenth Cause of Action, they allege deprivation of rights under 42 U.S.C. § 1983.[9] Sec. Am. Compl. ¶¶ 248-58, ECF No. 55. They also allege conspiracy under the Twenty-Third Cause of Action. *Id.* ¶¶ 290-93. The Court shall address each in turn.

### A. Deprivation of Rights Under 42 U.S.C. § 1983

Plaintiffs contend that Ms. Sterbick may be held liable under 42 U.S.C. § 1983 for judicial deception. Pls.' Resp. 5-7, ECF No. 266.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute provides that "[e]very person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Courts have observed that § 1983 is not itself the source of substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere

---

[9] Plaintiffs add "and *Braam*" in the title of the cause of action in their complaint, but it only appears in the title, and they do not make arguments in their brief in response to the summary judgment motion. Additionally, although the term "negligence" is included in the title, Plaintiffs make no further mention of it nor make any arguments related to negligence in their brief. Therefore, the Court likewise drops the wording in its discussion of this cause of action.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 10

1  conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*

Here, Plaintiffs allege that they were deprived of their constitutional due process liberty interest in their parent-child relationship, which is a violation of the Due Process Clause of the Fourteenth Amendment. Pls.' Resp. 5-6, ECF No. 266. The Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1. Procedural due process claims typically arise when a child is removed from a parent's care, because "[t]he Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)). Removal must be supported by "reasonable cause to believe that the child is in imminent danger of serious bodily injury." *Id.* (quoting *Mabe*, 237 F.3d at 1106). Even if the removal is pursuant to a court order, as here, the right may be violated if the court order was obtained through judicial deception, that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial deception." *David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022). "A misrepresentation or omission is material if a court would have declined to issue the order had [the defendant] been truthful." *Id.* "The court determines the materiality of alleged false statements or omissions." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002)).

Ms. Sterbick argues that Plaintiffs have not made the required substantial showing of deliberate falsehood or reckless disregard for the truth, nor that any misrepresentation or omission

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 11

was material. Def.'s Mot. 9-12, ECF No. 255. Plaintiffs assert that Ms. Sterbick made false statements to the Superior Court in her declaration, prepared by AAG Leuzzi, for the motion to remove the Medicraft children. *Id.* at 3, 6. Plaintiffs assert that Ms. Sterbick made two false statements:

> "On February 6, 2019, the parties were set to appear for a full no contact order. Neither party appeared, raising great concern for both counsel and the State of New York."; and "These children are no longer safe in the care of their mother and require emergent and immediate removal."

*Id.* at 4 (citing Sterbick Declaration, ECF No. 267-17, at 7:17–18, 14:18–19). Plaintiffs state that it "appears to be the only evidence on those subjects which was put before the Superior Court before the removal order was entered." *Id.* They argue that the statements were false because the New York State February 6, 2019 no-contact order clearly states in the caption: "Both Parties Present in Court," and the first sentence states that the order is being entered "On Consent," and with "James Medicraft having been present in court and advised of the issuance and contents of this Order." (citing Order of Protection, ECF No. 256-1 at 22). Plaintiffs allege that the second statement was false because Ms. Sterbick believed "exactly the opposite," as she conceded in her motion. *Id.* (citing Def.'s Mot. 5, ECF No. 255). Plaintiffs contend that these statements were material as evidenced by how closely the order mirrored her declaration, specifically emphasizing concerns about "the risk of flight." *Id.* at 6 (citing Order Placing Children in Shelter Care ¶ 2.6, ECF No. 252-7).

The referenced paragraph states:

> The Court has concerns about all the information from the school, serious allegations of domestic violence, the father's violation of the Protection Order, and the risk of flight.

*Id.* ¶ 2.6. The Court notes that the Juvenile Court continues in its Order to state:

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 12

> The photographs from the Department show bruises and scratches on the children, some of which may be consistent with an older child against a younger child, but the bruises are very concerning. The information shows the parents have moved to seven states.
>
> Based on the totality of circumstances, [i]t is in the children's best interests to be removed from the parent's care at this time.

*Id.* ¶¶ 2.7-2.8. Contrary to Plaintiffs' assertion that Ms. Sterbick's declaration appears to be the only evidence on the subject put before the Superior Court, the Juvenile Court reviewed other documents and declarations submitted by both parties, included the above-referenced photographs of the children, and heard arguments of counsel. *Id.* ¶ 1.3; Fry Decl., ECF No. 252-16.[10]

Also before the Juvenile Court was the declaration of the CPS investigator and the motion for the hearing with copies of the New York court orders and hearing transcripts, which included court filings by both Shaylee and James, each alleging serious domestic violence issues. Certification of Emergency Hearing, ECF No. 252-15. The referenced New York Protection Order was included, so the Juvenile Court had the original document and need not rely on Ms. Sterbick's description. *Id.* The New York documents included Shaylee's testimony that she was afraid of James and working with a domestic violence counselor, James' motion to modify the protection order stating that Shaylee abused the children in her bipolar manic phases by hitting them and spanking them with belts and she has run with the children three times in the past, the record of James' arrest for violating the protection order, and the Sheriff's Office incident report investigating the children's absence from school and the family's flight from New York. *Id.*

---

[10] Plaintiffs note that the Superior Court record does not include any declaration or affidavit from the children's Guardian Ad Litem, but the Order states that Ms. Whalen was present, with the CASA attorney, and in her deposition testimony, Ms. Whalen testifies that she supported the removal, and testified concerns about James violating the no-contact order, the children's behaviors, bruises and marks, their mental health and well-being, Shaylee's ability to keep the children safe, and the risk of flight.. Order Placing Children in Shelter Care ¶ 1.2, ECF No. 252-7; Whalen Dep. 72-73, ECF No. 252-17; ECF No. 252-18.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 13

Further, even if the disputed statements were redacted, Ms. Sterbick's declaration included other undisputed statements that would have been relevant to the court's findings, such as the background of James and Shaylee's meeting and moving across the country multiple times, the referral to CPS when NM was born and Shaylee informed the hospital nurses that she feared James wanted to kill her, Shaylee's visit to the elementary school in New York fearing that James would try to kidnap the children during the fire drill, the order for James to complete a full psychological evaluation and complete a 26-weeks anger management course, a reference to the children's New York attorney disclosing in an affidavit "that the children reported being fearful of their father and that their father threatened to kill 'their mother and throw her body in the river,'" the multiple violations of the no-contact order, the findings from the first shelter care hearing, multiple CPS intakes, school reports of concern, and more. Sterbick Decl., ECF No. 267-17. Ms. Sterbick also reported that Shaylee had moved out of the shelter into a motel, was working at night with the children attending a night childcare center, and the State believes she could flee with less than an hour notice. *Id.*

In response to Ms. Sterbick's motion, Plaintiffs assert that her arguments are implausible. Pls.' Resp. 6, ECF No. 266.[11] But plausibility is not the standard at this stage of the litigation. The Plaintiffs must establish that, but for the misstatements, the Juvenile Court's Order would not have issued. Plaintiffs have not met their burden to survive summary judgment on this ground. The Court finds that Ms. Sterbick's misstatements were not material to the Juvenile Court's findings. Accordingly, her motion for summary judgment on the § 1983 claim will be granted.

---

[11] Plaintiffs add that Ms. Sterbick argues that she has qualified immunity to this claim, Pls.' Resp. 7, ECF No. 266, but the Court notes that Ms. Sterbick's motion advises the Court that qualified immunity is not applicable to claims of judicial deception, Def.'s Mot. 9, ECF No. 255.

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 14

**B. Conspiracy**

Ms. Sterbick also moves for summary judgment on the conspiracy cause of action alleged against her on the basis that Plaintiffs are unable to establish the required elements to establish a civil conspiracy. Def.'s Mot. 14-15, ECF No. 255.

To establish a civil conspiracy, the plaintiff "must prove by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wash. App. 332, 350-51 (Wn. Sup. Ct. 1996). The alleged coconspirators "must have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Curow-Ray v. City of Tumwater*, No. 09-cv-5633, 2010 WL 3222505, at *13 (W.D. Wash. Aug. 12, 2010). Further, "[b]ecause the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently – its viability hinges on the existence of a cognizable and separate underlying claim." *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020).

Plaintiffs argue that they "intend to prove" that Ms. Sterbick conspired with AAG Leuzzi and Ms. Sanchez to mislead the Juvenile Court. Pls.' Resp. 7, ECF No. 266. They contend that the misleading nature of the co-workers' declarations, in combination with evidence of general animus, is sufficient to find a tacit agreement. *Id.* at 8. However, at this stage of the litigation, Plaintiffs must do more than "intend to prove" that Ms. Sterbick entered into an agreement to "fabricate false information to take the Medicraft Children into State custody." Sec. Am. Compl. ¶¶ 291-92, ECF No. 55.

Ms. Sterbick provided evidence that shows that neither she nor Ms. Sanchez participated in making the decision to remove the children, and she was separately directed by a Kent office

ORDER GRANTING ELIZABETH STERBICK'S MOTION FOR SUMMARY JUDGMENT

- 15

Area Administrator to remove the children. Sterbick Dep. 69, 72-73, 100-101, 111-12, ECF No. 256-2. Plaintiffs highlight that Ms. Sterbick's personal opinion was for the children to remain with the mother and have more safety planning occur, which appears to weigh more towards lack of an agreement. Pls.' Resp. 4, ECF No. 266. Plaintiffs provide the Court with no evidence that would show a genuine issue for trial on this claim. "On summary judgment, 'it is not our task . . . to scour the record in search of a genuine issue of triable fact.'" *Californians for Renewable Energy v. California Pub. Utils. Comm'n*, 922 F.3d 929, 935–36 (9th Cir. 2019) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

Accordingly, the Court will grant Ms. Sterbick's motion on the conspiracy claim.

## V.     CONCLUSION

For the foregoing reasons, Defendant Elizabeth Sterbick's Motion for Summary Judgment, ECF No. 255, is GRANTED.  The motion is granted with regard to the claim of Deprivation of Rights Under 42 U.S.C. § 1983, and the claim of conspiracy.  However, Ms. Sterbick withdrew her motion as to the assault and battery claim, which will proceed to trial on April 8, 2024.

DATED this 4th day of March, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge