The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MEDICRAFT, *et al.*,

    Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

    Defendants.

NO. 21-cv-1263

**ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiffs, the Medicrafts (parents and minor children), claim they were wrongfully separated by the State of Washington's Department of Children, Youth, and Families ("DCYF"). Defendants include the State/DCYF, Phoenix Protective Services (a state contractor), and individuals[1] who are alleged to have been involved in either the children's separation or their time in State custody. Defendant Tabitha Culp became the social worker assigned to the Medicraft case in January 2020, and her Motion for Summary Judgment, ECF No. 253, is currently pending before

---

[1] Individual State defendants Derek P. Leuzzi, Tanessa Sanchez, Tabitha Culp, Elizabeth Sterbick, Tabitha Pomeroy, Ross Hunter, Bonnie White, and Cleveland King, and individual Phoenix defendant Lufti Al Marfadi. All individual defendants were sued together with spouse and marital community.

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 1

the Court.[2] Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant Ms. Culp's motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

The circumstances of this case required the Court to review an extensive factual and procedural background with multiple parties. The parties are familiar with the factual and legal background of this dispute, and the Court's prior orders have provided additional background in varying contexts, so only a summary of facts relevant to this motion are provided.

The Washington State's Department of Children, Youth, and Families ("DCYF") is responsible for delivering family and children's services to preserve families when appropriate and ensure children's health and safety. Ombuds 2019 Rpt. 5, ECF 278-4. Its mission is that "[a]ll Washington's children and youth grow up safe and healthy–thriving physically, emotionally, and educationally, nurtured by family and community." Job Bulletin 1, ECF No. 267-23. The State is divided into regions that are run by Regional Administrators. Hunter Dep. 7, ECF No. 272-1. King County is Region 4, which is further divided into six field offices, each overseen by Area Administrators, who report to the Deputy Regional Administrator. *Id.*; Applebee Dep. 9, ECF No. 250-1. King County also has three Regional Area (or Program) Administrators who provide support to all of King County for the after-hours program, adoption program, and the placement desk. Applebee Dep. 9-10. About 2,000 children were in Region 4 care during the time of the events at issue in this case. *Id.* at 10. The Kent field office, because it is a very large office with a heavy

---

[2] In total, Defendants filed seven motions—five motions for summary judgment and two motions for partial summary judgment. ECF Nos. 246, 249, 251, 253, 255, 257, 259. The other motions either have been or will be addressed by separate orders.

[3] Including the motions, responses, and replies; together with multiple exhibits as well as prior related motions and responses and prior related Court orders.

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 2

caseload, is run by two Area Administrators—Shae Hopfauf, Kent East, and Cleveland King, Kent South. Hunter Dep. 7; Sterbick Dep. 67, ECF No. 256-2; Sanchez Dep. 22, ECF No. 250-5.

Child Protective Services ("CPS"), also organized by geographic areas, investigates allegations of child abuse and neglect that come in from the community. Sanchez Dep. 10, 21. These allegations are in the form of an "intake" or "referral." Sterbick Dep. 25, ECF No. 252-2. The CPS investigator has face-to-face contact with the child and tries to work with the family to determine if they need services, and the investigator may file a dependency petition before the investigation is completed. Sanchez Dep. 25.

A Child Family Welfare Services ("CFWS") social worker takes over cases once CPS has filed a dependency petition on a child, even while the CPS investigation continues. *Id.* at 11, 25. The social worker's role is to start working with the family, providing services, helping with referrals for services, providing concrete goods, and engaging with them to support reunification if possible, and provide stable out-of-home placements. *Id.*; Culp Dep. 62, ECF No. 254-6. Children may not be removed from their parents without a court order or a protective custody order. Sterbick Dep. 73. If the court orders the removal of a child from the parents, DCYF becomes the guardian and its role is to ensure that the child is in a safe placement that is meeting all of their needs. Whalen Dep. 61, ECF No. 254-12. A Guardian Ad Litem ("GAL") may be appointed by the court to advocate for the best interests of children in these situations. Whalen Dep. 72, ECF No. 252-17.

The regional placement desk is responsible for placements of children who have been removed from their home. Sterbick Dep. 48-49, ECF No. 254-9. The staff works to find appropriate foster homes, which become licensed for a certain number of children. *Id.* at 45. Multiple factors play a role in finding a placement, including keeping the child connected to their family and community, the age and special needs of a child, the number of children the home is licensed to

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 3

take in, whether day-care is required, and so on. *Id.* If a child cannot be placed by late afternoon, an after-hours request is submitted to the regional after-hours program to ensure there will be after-hours supervision, and a hotel organized that will accommodate out-of-placement children. *Id.* at 33. The after-hours program is managed out of the DCYF Kent office. Pomeroy Dep. 29-30, ECF No. 250-2. Children with complex needs, whether mental health issues, or aggressive or destructive behaviors, may be eligible for a placement with a Behavioral Rehabilitation Services ("BRS") provider, who is highly skilled with behavioral issues. Applebee Dep. 142-43, ECF No. 260-19.

The Medicraft family—James, Shaylee, and their five children JM, AM, EM, MM, and NM—became involved with Washington State Child Protective Services ("CPS") in February 2019. Culp Decl. 3, ECF No. 278-19. Intake 4091427 was screened on February 25, 2019, in which the referent alleged neglect of the children, advised that the family had been living in New York and was now living somewhere in the Seattle area, and relayed that there was an active no-contact order as well as an arrest warrant for James for violation of the no-contact order. CPS Assess. ID 72915070, ECF No. 270-5. The referent indicated concern that Shaylee and the children were forced to relocate and were homeless. *Id.* The case was transferred to the Kent office and assigned to Tanessa Sanchez to investigate. Sanchez Dep. 21-22, ECF No. 250-5. Ms. Sanchez's investigation led to findings that James was in contact with Shaylee and the children in violation of the no-contact order that had been issued in the New York Family Court, he had not completed the court-ordered services in New York,[4] and Shaylee was not accepting the social worker's services

---

[4] Conditions included James' mandatory participation and successful completion of a court approved 26-week anger management course as well as a psychiatric evaluation and compliance with aftercare treatment recommendations. NY Court Docs. 36, ECF No. 247-4.

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 4

that would help remedy the situation. *Id.* Allegations of neglect were deemed founded, and the case was transferred to Child Family Welfare Services. *Id.*

A dependency petition was filed on April 25, 2019, and the children were temporarily removed from Shaylee's care by court order. Shelter Care Hearing Order, ECF No. 247-5. After an initial shelter care hearing on April 30, 2019, the children were returned to Shaylee's care with conditions that included allowing contact between the children and their New York attorney, cooperation with the New York pending case, a requirement to follow the no-contact order, no visitation granted to James, and the requirement to cooperate with the shelter care's services, including counselling for all the children and Shaylee. *Id.*

During the following months, as the dependency petition was being reviewed, multiple CPS intakes were received and investigated related to neglect, inappropriate discipline, and violations of the no-contact order. Sterbick Decl. 9, ECF No. 256-8; Sanchez State Court Decl. 2, ECF No. 252-8; *see also* Case Note 46407681, ECF No 252-9; Case Note 46136936, ECF No. 252-10; Case Note 46427965, ECF No. 252-11. Following a staffing and planning meeting on December 5, 2019, a decision was made to again remove the children from Shaylee's care, and an emergency hearing was held on December 9, 2019, during which the King County Superior Court, Juvenile Department, issued an Order Placing Children in Shelter Care. Order, ECF No. 247-6. The Order provided for supervised visitation between Shaylee and the children a minimum of three times per week for two hours, and supervised visits between James and the children according to prior order. *Id.*

In January 2020, social worker Elizabeth Culp in the DCYF Kent office was assigned to the Medicraft children's case. Culp Dep. 9, 45, ECF No. 254-6. Her supervisor was J'aime Allbee, who reported to the Kent office Area Administrator, Cleveland King. Culp Dep. 46-48, ECF No. 281-1.

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT
- 5

The two youngest children, NM and MM, aged 1 and 4, were able to stabilize in foster homes fairly quickly. Culp Dep. 184-87, 190, ECF No. 260-5; Whalen Dep. 114-15, ECF No. 260-6. But the children did not all get the benefit of stable placements, and especially the three older boys did not respond well to removal from their mother's care. Mother's Emergency Motion for Return Home, ECF No. 286-1. Ms. Culp asserts that James coached and encouraged the children's unsafe behaviors in his interactions with them, and she requested a temporary suspension of his visitation. Social Worker Decl.3, ECF No. 278-19; *see also* Case Note 47006046 (documenting James' encouragement and negative comments about CPS); Whalen Dep. 113, 118, ECF No. 260-6 (describing concerning behaviors that appeared to have been coached). There are multiple reports of JM, AM, and EM assaulting staff members, including hitting, punching, kicking, spitting, biting, and destroying property as well as trying to run away. Social Worker Decl. 2, ECF No. 278-19; Culp Dep. 25, 59, ECF No. 247-7.

The police were called to the Kent office on multiple occasions, more than one staff member required medical attention, and one after-hours worker suffered permanent damage to her retina when AM hit her in the face from behind while in the car. Social Worker Decl. 2, ECF No. 278-19. All three children were hospitalized for assessment as a result of their behavior. *Id.* During this time, while the boys were on night-to-night placements, some of which were in hotels supervised by a social worker, there were also reports of the boys staying overnight in a vehicle with a social worker after being kicked out of a motel room for bad behavior. *See, e.g.*, Case Notes 47015444, 47017994, ECF No. 267-25.

In early February 2020, Shaylee filed an emergency motion for return of JM, AM, and EM. Mother's Emergency Motion for Return Home, ECF No. 286-1. Shaylee reported that the boys were "in crisis," living in hotels or the Kent DCYF office, and she had "witnessed the children

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT
- 6

being restrained, pushed up against walls and picked up by security guards." *Id.* Shaylee included photographs of the children with bruises received during DCYF care. *Id.* She noted that when she is with the boys, their behavior improved, and then escalated again after she left, and DCYF "is unable to provide safe and appropriate care for these children." *Id.* Shaylee also gave notice of her intent to seek return of the two younger children by separate motion. *Id.* Ms. Culp recommended the motion be denied based on the family's history, James' failure to engage in any of the ordered services, and concerns that James was coaching the children's unsafe behaviors. Social Worker Decl., ECF No. 278-19.  In addition to reviewing case notes and the pleadings, the court was also provided with a report from Dr. Solchany, who opined that it would be detrimental to the children's psychological health to return them home and that the children would benefit from medication. Order Denying Return, ECF No. 247-17. The court expressed concern that domestic violence continued in the home and impacted the children, the parents were unwilling to follow court orders, Shaylee had not remedied the deficiencies that had caused the removal of the children, and the risk that the family would flee. *Id.* Shaylee's motion was denied, and a motion for appointment of counsel for the children was also denied. *Id.*

On February 29, 2020, the Governor proclaimed a State of Emergency for all counties in the State as a result of the COVID-19 outbreak. Proclamation, ECF No. 286-6.  This resulted in a suspension of in-person visitation requirements for children in DCYF custody as well as the temporary shutdown of many providers of remedial services. *Id.* The fact-finding trial on the dependency petitions that had been set for March 2, 2020, had to be postponed. Hunter Dep. Ex. 18, ECF No. 272-1. The dependency trial ultimately proceeded in September and October 2020, conducted by Zoom due to the COVID-19 pandemic, and on October 22, 2020, the King County Superior Court, Juvenile Division, dismissed the dependency. Order Dismissing Dependency, ECF

No. 250-19. The Court found that the State had "failed to prove that the Medicraft children are dependent pursuant to RCW 13.34.030(6)(c)." *Id.* at 2. The children were reunited with their parents ten months after having been removed, and they were taken to their new home in South Carolina. Kliman Rpt. 2, ECF No. 276-2. The Medicrafts claim that the children developed serious behavioral issues and signs of trauma because of their removal and abuse suffered while in the State's custody. *Id.* at 2-3.

The Medicrafts filed this lawsuit in King County Superior Court on August 18, 2021. Compl., ECF No. 1-1. This case was timely removed to this Court by Defendants in September 2021. ECF No. 1.[5] The operative complaint is Plaintiffs' Second Amended Complaint, ECF No. 55, which was filed on March 7, 2022. Plaintiffs assert 23 causes of action against 11 Defendants, including DCYF, Phoenix Protective Corporation, and 9 individuals. Relevant to the pending motion, the Medicrafts assert the Twelfth Cause of Action—Negligence and Deprivation of Rights Under 42 U.S.C. § 1983 and *Braam*[6]—against Defendant Tabitha Culp. Sec. Am. Compl. ¶¶ 243-47, ECF No. 55. Ms. Culp moves for summary judgment on the claims asserted against her. Def.'s Mot, ECF No. 253.

### III.   LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162

---

[5] The Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the asserted cause of action under 42 U.S.C. § 1983, and supplemental jurisdiction over the other asserted causes of action under 28 U.S.C. § 1367.
[6] Referring to *Braam v. State of Washington*, 150 Wn.2d 689 (2003).

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 8

(9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## IV.   DISCUSSION

Under Plaintiffs' Twelfth Cause of Action, they allege negligence and deprivation of rights under 42 U.S.C. § 1983 and *Braam*. Sec. Am. Compl. ¶¶ 243-47, ECF No. 55. The Plaintiffs' allegations are not a model of clarity, but the Court interprets these as separate claims and shall address them as such.

**A.   Deprivation of Rights Under 42 U.S.C. § 1983 and *Braam***

Plaintiffs contend that Ms. Culp may be held liable under 42 U.S.C. § 1983 for failing to protect JM, EM, and AM "from unreasonable harm, including the physical abuse they suffered at the hands of other social workers and security." Sec. Am. Compl. ¶ 245, ECF No. 55; Pls.' Resp. 9-12, ECF No. 265.

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute provides that "[e]very person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Courts have observed that § 1983 is not itself the source of

1  substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere
2  conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S.
3  137, 144 n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right
4  allegedly infringed." *Id.*

5       Here, Plaintiffs claim appears to be rooted in the Fourteenth Amendment as a substantive
6  due process claim. *See* Sec. Am. Compl. ¶ 244, ECF No. 55 (referring to "a fundamental liberty
7  interest and substantive due process right to be free from risk of harm"); Pls.' Resp. 9 (stating that
8  the Medicraft children had a "constitutional due process liberty interest."). The Due Process Clause
9  provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of
10 law." U.S. Const. amend. XIV, § 1. Plaintiffs also reference *Braam* in conjunction with § 1983. In
11 *Braam*, the Washington Supreme Court recognized that "foster children have a constitutional
12 substantive due process right to be free from unreasonable risks of harm and a right to reasonable
13 safety. To be reasonably safe, the State, as custodian and caretaker of foster children must provide
14 conditions free of unreasonable risk of danger, harm, or pain, and must include adequate services
15 to meet the basic needs of the child." 150 Wn.2d at 700. *See also* RCW § 13.34.020 (declaring that
16 the "right of a child to basic nurturing includes the right to a safe, stable, and permanent home.").

17      Section 1983 also has a causation requirement; a plaintiff must establish that the alleged
18 violation was caused by the conduct of a person acting under the color of state law. *Crumpton v.*
19 *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Here, the parties dispute whether Ms. Culp can be held
20 liable as a person who caused the constitutional violation. Def.'s Mot. 14-16, ECF No. 253; Pls.'
21 Resp. 10-11, ECF No. 265. Ms. Culp asserts that she neither caused nor personally participated in
22 any alleged deprivation of rights.  Def.s' Mot. 14-15. Plaintiffs argue that she can be held liable as
23 a supervisor for the acts of subordinates. Pls.' Resp. 10.

24 ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT
25 - 10

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) ("Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them."). In other words, "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Murguia v. Langdon*, 61 F.4th 1096, 1107 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553 (2024) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

In addition to the required causal connection, culpability is limited by intent to "deprive another of that person's rights; both limitations on the nature of culpable conduct are critical." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915–16 (9th Cir. 2012 (citing *Iqbal,* 556 U.S. at 677). The Supreme Court has ruled that merely negligent actions or omissions by state officials do not "deprive" a person of life, liberty, or property within the meaning of the Fourteenth Amendment, and thus are not actionable under § 1983. *Daniels v. Williams*, 474 U.S. 327, 328, 332 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Similarly, under *Braam*, more than negligence is

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT
- 11

required. 150 Wn.2d at 700. Further, "the mere failure to perform a legally required act is [not] grounds for § 1983 liability based on a substantive due process violation." *Murguia*, 61 F.4th at 1108.

Plaintiffs fail to present any evidence that Ms. Culp was a supervisor. Plaintiffs also fail to allege any actions that Ms. Culp personally took that caused any deprivation of rights. Ms. Culp testified regarding her efforts to work with the parents to come up with plans to keep the children safe by developing systems to get more structure. Culp Dep. 130, ECF No. 254-6. She testified that her goal was for the children to have stable placements and work towards reunifying the family. *Id.* at 12, 62, 185. Ms. Culp also testified that she was a daytime social worker, not a supervisor, and did not participate in decisions around after-hours arrangements or hotel placements. *Id.* at 46, 55, 110.

Plaintiffs produced a job bulletin for Ms. Culp's role, a Social Service Specialist, which includes in the job description: "Assist in placing children in foster care or other approved placements." Pls.' Ex. V, ECF No. 278-23; Pls.' Resp. 4. They also provide a March 25, 2020 placement referral form requesting a long-term placement for JM, which names Ms. Culp as the Worker, and Ms. Allbee as her supervisor. Pls.' Ex. W, ECF No. 278-22; Pls. Resp. 4. While this evidence shows that Ms. Culp may have participated in placements, it does not evidence her participation in the complained-of "placement exceptions" or in any deprivation of JM's rights.

Plaintiffs also provided a declaration from a Social Worker Supervisor at the Kent office who testified to witnessing the Medicraft children's behavior and interactions in the office. Pls. Resp. 6 (quoting ECF No. 142). Nothing in the declaration refers to Ms. Culp or to any actions taken, or not taken, by Ms. Culp. *See id.*

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 12

Plaintiffs reference case notes and emails that describe incidents where the Medicraft children were being mistreated. Pls.' Resp. 7 (citing Exs. Y-AA, ECF Nos. 278-25–278-27). The Court could find no reference in any of these exhibits to Ms. Culp except for the February 2020 "AIRS Notification" email, which was sent to Ms. Culp and her supervisor with a case summary describing an incident in which JM was pushed and thrown into a car by a security guard, requiring medical assistance and police intervention. Ex. AA, ECF No. 278-27. Plaintiffs complain that she did nothing, but that is insufficient for the Court to find that Ms. Culp caused a constitutional deprivation of JM's rights. Plaintiffs also make reference to Ms. Culp's "statutory duty to report suspected abuse or neglect." Pls.' Resp. 7-8, 11 (referring to RCW 26.44.030(1)(a))). The Court notes that the email containing the information originated from the Department's administrative notification system and was copied to Ms. Culp's supervisor. Although Plaintiffs state that they received no intake records in discovery, they do not provide any details of any incidents that Ms. Culp either witnessed or knew about and did not report.

Accordingly, Plaintiffs have failed to put forth evidence that creates a genuine dispute of fact, so the Court will grant Ms. Culp's motion with regard to the § 1983 claim.

**B. Negligence**

Plaintiffs allege that Ms. Culp may be held liable in negligence for "failing to follow up on allegations of physical abuse of the Medicraft Children at the hands of her co-workers." Pls. Resp. 12-13, ECF No. 265. Plaintiffs raise Ms. Culp's failure to report child abuse and neglect. *Id.* at 11. Certainly, under RCW 26.44.030(1)(a), social workers have a mandatory requirement "to report suspected abuse or neglect of children." The Washington Supreme Court held that the statute imposes a duty to report, which "supports an implied cause of action for a failure to fulfill that duty." *Beggs v. State, Dep't of Soc. & Health Servs.,* 171 Wn.2d 69, 78 (2011). The Washington

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 13

Court of Appeals later held that there is an implied cause of action under the statute for parents, as well as the child victims, against professionals who fail to report suspected abuse. *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 44 (2016).

As discussed above, Plaintiffs identify no evidence of Ms. Culp's failure to report any particular incident that she either witnessed or knew about. Their general statements that she was in a position to know of abuse is insufficient to create a genuine dispute of fact. And Plaintiffs make no other negligence arguments.[7] As such, the Court will grant Ms. Culp's motion with regard to negligence.

## V.  CONCLUSION

For the foregoing reasons, Defendant Tabitha Culp's Motion for Summary Judgment, ECF No. 253, is GRANTED.

DATED this 7th day of March, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[7] Ms. Culp refers to a general allegation in Plaintiffs' complaint regarding false testimony about James' negative impact on the children during visitation, Def.'s Mot. 18, but Plaintiffs did not respond to it or present any related evidence. Plaintiffs appear to make no claim related to the allegation. Therefore, the Court declines to discuss it further.

ORDER GRANTING TABITHA CULP'S MOTION FOR SUMMARY JUDGMENT

- 14